OPINION
Appellant, Tonya Motter, appeals a Butler County Court of Common Pleas, Juvenile Division, decision granting legal custody of her daughter to the child's father, Tad Leeds ("Leeds"). Upon review, we affirm the trial court's decision.
Vanessa Motter was born out of wedlock to appellant and Leeds on September 18, 1989. Leeds was not listed as the father on Vanessa's birth certificate. Nevertheless, the record reveals that Leeds maintained frequent and regular contact with Vanessa, specifically, "`bout every other Sunday or every Sunday * * * holidays and birthdays. Every time there [was] a birthday." Leeds testified he was afraid if he attempted to assert paternity, appellant would "take off and disappear." Indeed, during testimony, appellant admitted to threatening Leeds that "it would be a cold day in hell before he'd see her [Vanessa]" if he angered appellant. The record further reveals that Leeds has been married to a woman for the past six years with whom he has two children. Leeds' wife is a full-time homemaker.
On July 23, 1996, the Butler County Children Services Board ("BCCSB") filed a complaint alleging that Vanessa Motter was an abused and neglected child. The facts underlying the complaint indicated that Vanessa and her sisters had been physically abused by appellant's live-in boyfriend. Additionally, there were allegations of sexual abuse involving one of Vanessa's sisters.[1] Vanessa's maternal grandmother was awarded temporary custody of the girls. On July 26, 1996, the trial court returned the girls to the temporary custody of appellant, and issued an order prohibiting any alleged perpetrator of abuse from having contact with the girls.
On September 5, 1996, the trial court held a paternity hearing. Both appellant and Leeds were present and represented by counsel. While discussing the establishment of paternity, the court stated:
 Both of you understand that up until this moment that Ms. Motter is the only legal parent of this child. And Ms. Motter you understand that once the court finds that someone else in this case, Tad Leeds is the father of this child, he stands on equal footing with you after this trial. Do you understand that? Which means he has an equal right to seek custody. (Emphasis added.)
Appellant's response to the above question was affirmative. Leeds then requested that Vanessa's last name be changed from Motter to Leeds. The court, acknowledging that Leeds was seeking custody, held off making a ruling concerning the name change until it was determined where Vanessa would permanently reside. The court then ordered Leeds to pay child support and granted him regular visitation with Vanessa. The record reveals that throughout the pendency of this action, Leeds has consistently exercised his visitation privileges and paid his child support obligation.
On October 14, 1996, pursuant to R.C. 2151.01 et seq., the trial court held an adjudicatory hearing. Both appellant and Leeds were present with counsel. At the hearing, the parties indicated that they had reached an agreement that Vanessa should be adjudicated abused and dependent. The court entered a finding that Vanessa was an abused and dependent child and then continued temporary custody with appellant.
The requisite dispositional hearing was held on November 26, 1996 and was continued in progress until December 4, 1996. It is uncontroverted that the only contested issue at the hearing was "the placement of Vanessa." Both appellant and Leeds were present and represented by counsel. The parties presented arguments and evidence totaling more than two hundred pages in the record. Additionally, several BCCSB social summaries were admitted into evidence. In particular, the trial court admitted a November 25, 1996 social summary which stated that "BCCSB has no objection to temporary custody of Vanessa to Mr. Leeds if the court should grant Mr. Leeds temporary custody." On December 3, 1996, the guardian ad litem ("GAL") filed a written report with the court which stated:
 The Guardian is concerned about some of the choices the mother has made in regard to her children. * * * The Guardian feels that the father in this matter is the one at this time (sic) is able to provide the most stable home environment for this child and that it would be in the child's best interest that the father be granted custody of Vanessa.
Following the presentation of evidence, Leeds' counsel made a brief argument to the court in which he stated, "we would ask for temporary custody of [Vanessa] * * * for custody excuse me * * * to be placed with Tad * * * Tad Leeds." No written motion requesting custody was ever filed by Leeds.
On December 4, 1996, the trial court entered a dispositional hearing judgment entry granting legal custody of Vanessa to Leeds and granting appellant visitation privileges. It is from this entry that appellant now appeals setting forth two assignments of error.
In her first assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF TONYA MOTTER WHEN IT GRANTED LEGAL CUSTODY OF HER DAUGHTER TO THE CHILD'S FATHER WHEN NO MOTION FOR LEGAL CUSTODY WAS BEFORE THE COURT.
Specifically, appellant contends that the trial court erred in granting Leeds custody of Vanessa because he did not file a written motion requesting legal custody. Appellant argues that she was misled as to the issue being litigated at the hearing, and because she did not have notice that Leeds would be seeking custody, she was unprepared to attack his position.
R.C. 2151.353 controls the disposition of children who have been adjudicated abused, neglected or dependent. It provides:
 (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * *
 (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child.
Resolution of this assignment of error depends on how the above quoted language is interpreted. In particular, does the phrase, "files a motion requesting legal custody" apply to "either parent" and any "other person" who wishes to seek custody of a child, or does it apply only to those "other persons" who wish to seek custody of a child that has been adjudicated abused, neglected, and/or dependent? We read the phrase "files a motion requesting legal custody" as applicable to only those "other persons" who are not the child's natural parents. Therefore, only those "other persons" are required to file a motion requesting legal custody.
We begin our analysis with weight of legal authority which establishes that a natural parent has an inherent right to the custody of his or her child. As early as 1944, the United States Supreme Court recognized, "[i]t is cardinal with us that the custody, care, and nurture of the child reside first in the parents." Prince v. Commonwealth of Massachusetts (1944),321 U.S. 158, 166, 64 S.Ct. 438, 442. The Supreme Court of this state has been equally clear in pronouncing "that parents who are `suitable' persons have a `paramount' right to the custody of their minor children * * *." In Re Perales (1977), 52 Ohio St.2d 89,97 (citations omitted). See, also, In Re Hayes (1997),79 Ohio St.3d 46, 48.
Appellant argues in her brief that because Leeds failed to file a motion for legal custody, appellant was prejudiced because she was unaware that the trial court could grant Leeds legal custody of Vanessa. Both legally and factually we find appellant's contention unpersuasive. First, at the paternity hearing, a date that preceded the dispositional hearing by two and one-half months, Leeds indicated to both the court and appellant that he would be seeking custody of Vanessa when he requested that Vanessa's last name be changed from Motter to Leeds. Second, at the same hearing, the court issued a strong warning to Motter that as a result of Leeds establishing his paternity, he now stood on "equal footing" with her with "an equal right to seek custody" of Vanessa. Finally, at the dispositional hearing, the trial court afforded both parties a complete and full opportunity to present evidence, which resulted in a well-developed record. In light of the foregoing evidence, we conclude that appellant was in fact made aware that the trial court could, and indeed might, grant legal custody of Vanessa to her father, Leeds.
Next, appellant argues that the trial court erred in granting Leeds legal custody of Vanessa because the record indicates that he was seeking only temporary custody.[2] From the record it is very difficult to ascertain whether Leeds was seeking temporary or legal custody of Vanessa. When questioning BCCSB, Leeds' counsel asked, "Ma'am if this court would place temporary custody of Vanessa with my client * * * would your agency have any objections to that?" (Emphasis added.) Yet, at the close of evidence, Leeds' counsel seemed to indicate Leeds was requesting full legal custody when he stated, "we would ask for temporary custody of [Vanessa] * * * for custody excuse me * * * to be placed with Tad [Leeds]."
Upon review of the language of R.C. 2151.353, however, this court believes that whether Leeds was seeking temporary or legal custody of Vanessa is not an important distinction. When a child is determined to be abused, neglected and/or dependent, the statute gives the trial court express jurisdiction to "award legal custody of the child to either parent." In our estimation, no language could be more plain. The statute specifically empowers the trial court to sua sponte grant legal custody of a child to a parent. In the instant case, upon hearing the evidence presented, that is precisely what this trial court did.
Because a parent has an inherent right to the custody of his or her child, and because R.C. 2151.353 specifically empowers a trial court to grant legal custody of a child to a parent, we hold that a formal motion for legal custody need not be filed by a parent before a trial court may properly consider granting legal custody to that parent. To read R.C. 2135.353 as requiring the contrary would create an additional procedural requirement for a natural parent that this court does not believe was intended by the legislature. Finally, if we were to find that Leeds' failure to file a formal motion for legal custody of Vanessa precludes the trial court from considering him as Vanessa's legal custodian, fairness would require us to also preclude the trial court from considering appellant as Vanessa's legal custodian, as the record indicates that she also failed to file a motion for legal custody of Vanessa. Such a reading would certainly not serve Vanessa's best interests.
One final consideration: in holding that R.C. 2151.353 does not require a parent to file a formal motion before seeking legal custody, we specifically decline to follow the Fourth District Court of Appeals' decision in In the Matter of Farace (Dec. 31, 1997), Scioto App. No. 96CA2469, unreported. Farace, like the instant case, involved a legal custody dispute between the natural parents of a child where the father neglected to file a motion for legal custody, and yet was awarded legal custody. The Farace court analyzed the language in R.C. 2151.353(A)(3) and determined that "any person seeking legal custody of a child under the statute must file the requisite motion. * * * This includes parents." Id. at 9. In reaching its decision, however, the Fourth District relied on language from Kurtz and Giannelli, Ohio Juvenile Law (1997 Ed.) 307, Section 27.07, which in turn relied upon an unreported Eighth District Court of Appeals case, In re Fleming (July 22, 1993), Cuyahoga App. No. 63911. In light of the case law establishing a parent's inherent right to custody, we believe the Fourth District's reliance on Kurtz and Giannelli and Fleming is misplaced.[3] Therefore, we decline to follow this authority. Accordingly, appellant's first assignment of error is overruled.
In her second assignment of error, appellant contends:
 THE TRIAL COURT'S AWARD OF LEGAL CUSTODY OF THE CHILD TO HER FATHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
In this assignment of error, appellant contends that because Leeds established his paternity only three months prior to the final dispositional hearing, and because he had only been paying child support and engaging in regular visitation with Vanessa for those three months, the trial court's award of legal custody to Leeds was against the manifest weight of the evidence and an abuse of discretion.
The standard of review on a civil manifest weight of the evidence question is established by two Ohio Supreme Court cases, C.E. Morris v. Foley Construction (1978), 54 Ohio St.2d 279, and Season Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. If a trial court's determination is supported by competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. Furthermore, a trial court's decision with respect to custody issues will not be considered an abuse of discretion unless such decision is unreasonable, arbitrary, and unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
With these legal standards in mind, and upon careful review of the record, we find that the trial court had sufficient competent and credible evidence to justify an award of legal custody of Vanessa to Leeds. Contrary to appellant's suggestion, Leeds was neither a recent addition to Vanessa's life, nor was he a stranger. Leeds never denied paternity of Vanessa, and testimony revealed that he maintained a strong and active presence in her life since her birth. Additionally, the evidence revealed that the Leeds' home presented a comfortable and appropriate environment for Vanessa with no risk of exposure to any alleged perpetrator of physical or sexual abuse. Finally, the trial court had before it an independent report and recommendation from Vanessa's GAL. The GAL expressed candid concern about some of appellant's life choices and noted that at this time Leeds was better able to provide a stable home environment for Vanessa. The GAL therefore recommended that it was in Vanessa's best interest to award custody to Leeds.
In light of the evidence, we find that the trial court's award of legal custody of Vanessa to Leeds was neither against the manifest weight of the evidence nor an abuse of discretion. Accordingly appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, J., concurs.
KOEHLER, J., dissents.
[1] The alleged perpetrator of the sexual abuse was not appellant's live-in boyfriend, but appellant's mother's live-in boyfriend.
[2] Temporary custody is defined as legal custody of a child who is removed from his or her home and may be terminated at any time by the court in its discretion. See R.C. 2151.011(B)(12). Temporary custody orders must terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed in shelter care. See R.C.2151.353(F).
Legal custody is defined as a legal status which vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education and medical care, all subject to any residual parental rights, privileges, and responsibilities. See R.C. 2151.011(B)(9). Typically, the jurisdiction of the juvenile court terminates one year after the date of an award of legal custody. See R.C.2151.353(J).
[3] Additionally, Fleming involved a dispute between a natural parent and a grandmother, rather than between two natural parents. The grandmother was awarded legal custody of the child without first filing a motion for custody. Fleming is therefore factually distinguishable from both the facts of Farace and the facts of this case.