In re Perales, a Minor : Perales, aka Norment, Appellee, v. Nino, Appellant.

---

(No. 76-1159—Decided November 30, 1977.)

Mr. Robert P. Tucker, for appellee.

Messrs. Cannon, Burns, Mickel & Geller and Mr. Paul L. Geller, for appellant.

WILLIAM B. BROWN, J. The issue presented by this cause is whether the Juvenile Court of Lucas County properly awarded custody of Tracy Perales to Virginia Nino without a finding that Tracy's mother was an unsuitable parent.

Shirley Perales raises two arguments to support her contention that the Juvenile Court's grant of custody on her motion for return of child and custody was improperly entertained and decided. The first is that a court having jurisdiction over a custody action pursuant to R. C. 2151.23(A) does not properly implement that jurisdiction unless it complies with the requirements of R. C. 2151.27 and 2151.353.[3] The second is that the "best interest" test of custody provided for in R. C. 3109.04 is not applicable to an R. C. 2151.23(A)(2) custody action.

---

[3] The Court of Appeals found, and we agree, that the Juvenile Court of Lucas County did not have jurisdiction under R. C. 3109.04, to hear Miss Perales' custody action. The Juvenile Court could not assume jurisdiction under R. C. 3109.04, whose "guidelines" it adopted, because Miss Perales' complaint for return of child and custody did not involve an original award of custody to one of two parents or to a relative (R. C. 3109.04[A]), or a modification of such an award (R. C. 3109.04[B]) arising out of an action for "divorce, annulment, or alimony" in the Court of Common Pleas (R. C. 3105.21).

R. C. 2151.23(A) provides, in pertinent part:[4]

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, delinquent, unruly, abused, neglected, or dependent;

"(2) To determine the custody of any child not a ward of another court of this state;

"(3) To hear and determine any application for a writ of habeas corpus involving the custody of a child."

In *In re Torok* (1954), 161 Ohio St. 585, this court allowed a parent who had successfully defended a neglect action to sue for custody of the child in the Juvenile Court. In so doing, the court held that, under R. C. 2151.23(A) (2),[5] the Juvenile Court has jurisdiction to determine the

---

[4] R. C. 2151.23(A) also provides the Juvenile Court original jurisdiction over the following proceedings:

"(4) To exercise the powers and jurisdiction given the probate division of the court of common pleas in Chapters 5122 and 5123 of the Revised Code, if the court has probable cause to believe that a child otherwise within the jurisdiction of the court is a mentally ill person subject to hospitalization by court order, as defined in section 5122.01 of the Revised Code, or a mentally retarded person subject to hospitalization by court order as defined in section 5123.68 of the Revised Code;

"(5) To hear and determine all criminal cases charging adults with the violation of any section of Chapter 2151 of the Revised Code;

"(6) Under the interstate compact on juveniles in section 2151.56 of the Revised Code;

"(7) To hear and determine applications for consent to marry pursuant to section 3101.04 of the Revised Code."

[5] At the time the *Torok* opinion was written, R. C. 2151.23(A) provided:

"The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who is delinquent, neglected, dependent, crippled, or otherwise physically handicapped;

"(2) To determine the custody of any child not a ward of another court;

"(3) To determine the paternity of any child alleged to have been born out of wedlock and to provide for the support of such child, subject to the concurrent jurisdiction of other courts."

custody of any child not a ward of another court, even though the court has not first found such child to be delinquent, neglected, dependent, etc. The *Torok* court came to that conclusion by finding that the subsections of R. C. 2151.23(A) were not meant to be interdependent because to so interpret them would be to "limit the jurisdiction of the court" in a manner not intended by the General Assembly. Although R. C. 2151.23(A) has been amended since 1954, the rationale of the *Torok* case applies to the instant cause. If the Juvenile Court's jurisdiction over mentally retarded children (R. C. 2151.23[A][4]), minors wishing to marry (R. C. 2151.23 [A][7]), and adults charged with certain violations (R. C. 2151.23[A][5]) were to hinge on an allegation of dependency, neglect, abuse, delinquency, etc., the right to bring those causes of action in the Juvenile Court would be effectively precluded.

Moreover, an R. C. 2151.23(A)(2) action does not need to comply with R. C. 2151.27 and 2151.353. Those sections clearly apply to the neglect, abuse, and dependency hearings provided for in R. C. 2151.23(A)(1).⁶ For us to

---

⁶R. C. 2151.27 provides:

"Any person having knowledge of a child who appears to be a juvenile traffic offender or to be delinquent, unruly, abused, neglected, or dependent may, with respect to such child, file a sworn complaint in the juvenile court of the county in which such child has a residency or legal settlement, or in which such traffic offense, delinquency, unruliness, abuse, neglect, or dependency occurred. Such sworn complaint may be upon information and belief, and in addition to the allegation that the child is delinquent, unruly, abused, neglected, dependent, or a juvenile traffic offender, the complaint must allege the particular facts upon which the allegation of delinquency, unruliness, abuse, neglect, dependency, or juvenile traffic offender is based.

"Whenever a child, before arriving at the age of eighteen years, allegedly commits an act for which he may be adjudged delinquent, unruly, or a juvenile traffic offender, and the specific complaint thereon is not filed or a hearing held until after said child arrives at the age of eighteen years, the court has jurisdiction to hear and dispose of such complaint, as if the complaint were filed and hearing held before such child arrived at the age of eighteen years.

"If the complainant in an abuse, neglect, or dependency case is requesting permanent custody of the child or children, the complaint

hold that they also apply to R. C. 2151.23(A)(2) custody claims would be to limit the holding of the *Torok* case essentially to its facts, even though the rationale behind the case applies regardless of whether a neglect action precedes an R. C. 2151.23(A)(2) claim. Finally, to limit the original jurisdiction of the Juvenile Court under R. C. 2151.23(A)(2) to custody claims arising out of neglect actions is to deny parents the right to initiate custody proceedings when a third party has possession of the child and *habeas corpus* or change of custody actions are inappropriate. We therefore find appellee's first contention to be without merit.

---

shall contain a prayer specifically requesting such custody."

R. C. 2151.353 provides:

"If the child is adjudged an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

"(A) Permit the child to remain with his parents, guardian, or other custodian, subject to such conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child;

"(B) Commit the child to the temporary custody of the department of public welfare, a county department of welfare which has assumed the administration of child welfare, county children services board, any other certified organization, the Ohio youth commission for the purpose of diagnostic study and report as provided by division (B) of section 5139.05 of the Revised Code, either parent or a relative residing within or outside the state or a probation officer for placement in a certified foster home;

"(C) Commit the child to the temporary custody of any institution or agency in this state or another state authorized and qualified to provide the care, treatment, or placement that the child requires;

"(D) Commit the child permanently to the county department of welfare which has assumed the administration of child welfare, county children services board, or to any other certified agency. Upon such commitment the natural or adoptive parents are divested of all legal rights and obligations due from them to the child or from the child to them.

"No order for permanent custody shall be made at the hearing wherein the child is adjudicated abused, neglected, or dependent except and unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting such permanent custody and the summons served on the parents contains a full explanation that the granting of such an order permanently divests them of their parental rights."

Shirley Perales' second contention is that the "best interest" test of custody provided for in R. C. 3109.04 should not have been applied in the instant cause. To the extent that R. C. 3109.04 proceedings may grant custody in the "best interest" of the child without a finding of parental unsuitability (*Boyer* v. *Boyer* [1976], 46 Ohio St. 2d 83), Shirley Perales is correct.

R. C. 3109.04 deals with custody disputes arising out of divorce actions. The opposing parties in R. C. 3109.04 custody disputes are usually the child's parents,[7] who may have nearly equal emotional, financial and educational advantages to offer the child and who are on an equal footing before the law (R. C. 3109.03). Since both of the parents may be eminently qualified to raise the child, a finding of unsuitability would not be appropriate and the welfare of the child would be the only consideration before the court.[8]

Although divorce custody proceedings involving disputes between two parents are logically best served by looking only to the welfare of the child, the court's scope of inquiry must, of necessity, be broader in R. C. 2151.23 (A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child.[9]

---

[7]Someone other than a parent may be awarded custody of a child pursuant to R. C. 3109.04(A) or (B) only if "custody to neither parent is in the best interest of the child."

[8]"It is the universal rule that where a custody dispute is between parents in a divorce or legal custody action, the best interests of the child prevails, both parents having equal rights." Simpson, The Unfit Parent: Conditions Under Which A Child May Be Adopted Without The Consent Of His Parent, 39 Univ. of Detroit L. J. 347, 356.

[9]The right of a parent to raise his or her child has been defined as a "natural" right subject to the protections of due process. See *Meyer* v. *Nebraska* (1923), 262 U. S. 390; *In re Adoption of Anderson* (1951), 235 Minn. 192, 50 N. W. 2d 278; *People, ex rel. Portnoy,* v. *Strasser* (1952), 303 N. Y. 539, 104 N. E. 2d 895; *In re Ward* (1952), 39 Wash. 2d 894, 239 P. 2d 560. Most courts dealing with the parental versus third-party custody issue profess to choose between the "best interest" of the child doctrine and the "parental right" doctrine. Under the

The major statement by this court on the custody rights of a parent and a nonparent was made in *Clark* v. *Bayer* (1877), 32 Ohio St. 299, a century ago. In that opinion, Judge Ashburn acknowledges for the court, at page 310, that ''in all cases of controverted right to custody, the welfare of the minor is first to be considered,'' but he also determined that parents who are ''suitable'' persons have a ''paramount'' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.[10]

former, custody is awarded in accordance with best interests of the child regardless of the fitness of the parents. Under the latter, parents are entitled to the custody of their children unless it "clearly appears that they are unfit or have abandoned their right to the custody or unless there are some extraordinary circumstances which require that they be deprived of custody." Annotation, Child Custody—Parent or Grandparent, 31 A. L. R. 3d 1187, 1191, 1196. The importance of those doctrines and the names attached to them has probably been overestimated. Although jurisdictions professing to consider only the welfare of the child may not require a finding of unsuitability or state that there is a rebuttable presumption that it is in the best interest of the child to be placed in the custody of his parents, they do, in fact, tacitly assume that the welfare of the child is best served by his living with his parents. (See Note, Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties, 73 Yale L. J. 151, 154; Annotation, 31 A. L. R. 3d 1187, *supra*, at page 1191.) Moreover, both doctrines seek the same objective (albeit from two different approaches) and the result, under either doctrine is likely, in *most* cases, to be the same. See Johnstone, Child Custody, 1 Kan. L. Rev. 37, 42-44 (1952).

[10]Paragraphs 1 and 2 of the syllabus to *Clark* v. *Bayer*, *supra*, provide as follows:

"1. As a general rule the parents are entitled to the custody of their minor children. When they are living apart, the father is, *prima facie*, entitled to that custody, and, when he is a suitable person, able and willing to support and care for them, his right is paramount to that of all other persons, except that of the mother in cases where the infant child is of such tender years as to require her personal care; but in all cases of controverted right to custody the welfare of the minor child is first to be considered.

"2. The father's right is not, however, absolute under all circumstances. He may relinquish it by contract, forfeit it by abandonment

The language of the *Clark* opinion is clear. The welfare of the child is the interest given priority—the "first" interest. The court does not say, however, that it is the only interest, as it would be in an R. C. 3109.04 divorce custody action between parents. Moreover, the *Clark* opinion specifically provides for the interests of the parent by limiting the reasons for which parents may be denied the custody of their children. We find, based on the concern displayed in the *Clark* opinion for balancing the interests of both parent and child, that parents may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable—that is, that an award of custody would be detrimental to the child.[n]

It is the last criteria, other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in *Boyer* v. *Boyer, supra,* at page 87, that "the child's right to a suitable custodian and parental rights, when not in harmony, are *competing* interests, requiring that one give way to the other." (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the *Clark* opinion.

Once the court determines that the parent has forfeited custody or that parental custody would be detrimental to the child, it must indicate that a preponderance of

or lose it by being in a condition of total inability to afford his minor children necessary care and support."

(The distinction which the *Clark* opinion draws between fathers and mothers no longer applies. See R. C. 3109.03 and 2111.08.)

[n]It is becoming increasingly common for courts to weigh the emotional and psychological (as well as the physical and mental) effects which a custody award may have on the child. See Note, 79 Harv. L. Rev. 1710, 1713; and Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties, *supra.*

the evidence militates against parental custody by making a finding of unsuitability.[12]

The trial court failed to make a finding that Shirley Perales is unsuitable, and the evidence in the record that appellee forfeited her right to custody or that appellee's custody would be detrimental to Tracy is not sufficient for this court to substitute its judgment for that of the trial court. We therefore reverse the judgment of the Court of Appeals and remand to the trial court for a new proceeding to be held consistently with the criteria for finding unsuitability which are stated in this opinion.

*Judgment reversed.*

O'NEILL, C. J., CELEBREZZE and SWEENEY, JJ., concur.
HERBERT, J., concurs in the syllabus.
LOCHER, J., concurs in the judgment.
P. BROWN, J., dissents.

HERBERT, J., concurring in the syllabus. I concur in the syllabus because of my belief that the welfare of this child should be the touchstone of our inquiry. As I read the syllabus, a parent would be considered "unsuitable" for custody if such an award would be detrimental to the child. This satisfies my concern for Tracy Perales at this stage of her growth and development. Moreover, I cannot believe that the trial judge did not arrive at this same con-

---

[12]Our requirement of such a finding is in keeping with the procedural protection afforded parents by the General Assembly in neglect, abuse or dependency hearings (see *In re Fassinger* [1975], 42 Ohio St. 2d 505, and *In re Hunt* [1976], 46 Ohio St. 2d 378), and with the safeguards we have granted parents in R. C. 2151.23(A)(3) *habeas corpus* proceedings (see *In re Gosette* [1975], 42 Ohio St. 2d 143).

We do not intend a finding of unsuitability to connote only some moral or character weakness; instead, it is designed to indicate that contractual relinquishment of custody, abandonment, complete inability to provide care or support, or that parental custody would be detrimental to the child, has been proved by a preponderance of the evidence.

clusion, even though he may not have employed the words or phrases we now find appropriate.

If Justice Paul Brown is correct in his portrayal of the pragmatic and transitory nature of the type of custody involved in this case, and I suspect that he is, the future may well find Shirley and Tracy reunited as mother and child; but at a time when it will be in Tracy's carefully guarded best interests.

PAUL W. BROWN, J., dissenting. I do not perceive that R. C. 2151.23(A)(2) describes a "child custody proceeding." It merely designates the court which, in appropriate cases, has original and exclusive jurisdiction to determine the custody of a child in this state. Nor do I conclude that this statute in any manner deals with the problem of when a court may take away the predominant custodial rights of the natural parents of children and award those rights to other persons or to statutorily designated public agencies, thus permanently terminating all parental rights, including physical control over the person and personality of the child.

Certainly, a court making so drastic an order terminating parental rights must have some authority, historical or statutory, for so doing.

It would be shocking to bring about so great a parental loss on a mere finding that the best interests of the child can be better served.

*In re Torok* (1954), 161 Ohio St. 585, is not such authority, for that case merely decided that the Juvenile Court had jurisdiction to order the return of a child to her natural mother as against persons with whom she had placed the child and to whom she had paid several thousand dollars for the child's support. That case was similar to *Paddock* v. *Ripley* (1948), 149 Ohio St. 539.

Both of those cases were actions by the parent to recover a child alleged to have been wrongfully withheld. In neither action was this court concerned "with the factual questions [of] whether the child * * * [was] neglect-

ed or dependent or the * * * [parent] a fit person to have custody."[18] Each case turned upon the pure legal question of whether the Juvenile Court's jurisdiction to order the child's return to her rightful custodian depended upon a threshold finding of dependency, delinquency, parental unfitness, etc. *Torok, supra,* correctly said "no." *Paddock,* I believe, incorrectly said "yes."

Throughout its history R. C. Chapter 2151, although amended many times, has persistently defined custody so as to clearly distinguish "permanent custody" from "legal custody" (R. C. 2151.011[B] [1] through [13]), so that defined "residual parental rights, privileges and responsibilities" persist only under the latter. These parental rights, coupled with a continuing Juvenile Court jurisdiction, present a duty of further inquiry upon motion due to a change of circumstances similar to that which pertains in domestic relations cases such as *Boyer* v. *Boyer* (1976), 46 Ohio St. 2d 83. The type of custody granted in *Boyer* is subject to that court's continuing jurisdiction and is not "permanent custody" as defined by R. C. 2151.011 (B) (12). Residual parental rights, privileges and responsibilities clearly persist, and the Juvenile Court has continuing jurisdiction.

Under the guidelines of R. C. 3109.04 the right of courts in domestic relations cases to grant custody to those other than parents when circumstances reflecting upon the best interest of the child are demonstrated is legislatively approved. Our holding in *Boyer, supra,* in my opinion, need not have turned upon the statute's constitutional precedence over the rule, nor upon the statute itself, since rights of parents, including residual rights and obligations identical with those described in R. C. 2151.011(B) (11), were not terminated in *Boyer.* The court's inherent power to grant custody to those other than parents in appropriate circumstances was recognized as early as *Gishwiler* v. *Dodez* (1855), 4 Ohio St. 615, 617.

---

[18]*In re Torok,* 161 Ohio St. 585, 588.

I see no reason, so long as it is clearly recognized that the Juvenile Court is here dealing with the same sort of "legal custody" as is defined in R. C. 2151.011 (B) (10), to deny to the Juvenile Court a similar power on a continuing basis to control the child's environment for his best interest nor do I conclude that this power is derived from R. C. 3109.04 or bound by its criteria.

I consider that the Juvenile Court has this jurisdiction absent a finding of unsuitability of the parents and that its power would not be made greater or different in this type of proceeding with a finding of unsuitability.[14]

On the other hand, "permanent custody," that legal status created by a court[15] which divests parents of "all rights, duties and obligations" including the right to consent to adoption, can only be granted without parental consent to organizations described in R. C. 2151.011 and then only after such proceedings and notice as are discussed in *In re Fassinger* (1975), 42 Ohio St. 2d 505.

I would reverse the Court of Appeals and affirm the judgment of the Juvenile Court.

---

[14]As a makeweight proposition it would be observed that a parent's action in habeas corpus for custody of a child has been defeated on the grounds of the child's best interest in many instances although the petitioner's right of custody had been declared in the divorce proceedings.

[15]See R. C. 2151.011(B) (12), *supra.*