OPINION
Respondent Tamara Lynn Hickey appeals a judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, which awarded the custody of her minor son, Quentin Paulik, to the child's natural father, Respondent-appellee, John Paulik. Appellant assigns four errors to the trial court:
ASSIGNMENTS OF ERROR
FIRST ASSIGNMENT OF ERROR
 THAT THE TRIAL COURT ERRED IN REACHING ITS DECISION AND JUDGMENT WITHOUT FIRST OBTAINING A FINAL REPORT AND RECOMMENDATION FROM THE GUARDIAN AD LITEM APPOINTED IN THIS CASE.
SECOND ASSIGNMENT OF ERROR
 THAT THE DECISION OF THE TRIAL COURT WAS IN ERROR BECAUSE THE SAME WAS TAINTED AND FLAWED BY VIRTUE OF THE INITIAL ISSUANCE OF AN EX PARTE ORDER BASED UPON MATERIALLY INACCURATE INFORMATION, WHICH RESULTED IN A STATUS QUO OF TEMPORARY PLACEMENT IN JOHN PAULIK, WHICH MATERIALLY AND PREJUDICIALLY AFFECTED THE OUTCOME OF THIS CASE.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE APPELLANT'S SUBSTANTIAL PREJUDICE BY ADMITTING INTO EVIDENCE AND GIVING CONSIDERATION AND WEIGHT TO SEVERAL MUNICIPAL COURT MISDEMEANOR CONVICTIONS ARISING FROM NO CONTEST PLEAS AND ALSO BY ADMITTING INTO EVIDENCE AND GIVING CONSIDERATION AND WEIGHT TO A NUMBER OF UNSUBSTANTIATED HEARSAY REPORTS.
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN APPLYING THE STANDARD FOR DETERMINING AN INITIAL AWARD OF CUSTODY AS BETWEEN A HUSBAND AND WIFE OR AS BETWEEN PARENTS WHERE THERE HAS BEEN NO PREVIOUSLY-ESTABLISHED CUSTODY ORDER, TO THE DETERMINATION OF THE AWARD OF CUSTODY IN THE INSTANT CASE, RATHER THAN APPLYING THE STANDARD WHICH WOULD APPROPRIATELY BE APPLIED TO A MOTION OR PETITION FOR CHANGE OR MODIFICATION OF CUSTODY.
The record indicates this matter arose upon a complaint filed by the child's maternal grandmother, appellant's mother, Delores Wietz, for custody of Quentin.
The trial court approved and adopted the magistrate's decision, which made extensive findings of fact and conclusions of law regarding this action. The magistrate found Quentin was born in Stark County, Ohio, on October 30, 1987, and his parents have both resided with him through most of his life, although they never married. Most of Quentin's early years, his maternal grandmother, appellee Delores Wietz also lived with the family and Quentin. Several years after his birth, appellee Delores Wietz obtained a separate apartment but also maintained a bedroom at Quentin's residence and stayed there with him to provide daycare when his parents were working. Appellee John Paulik was adjudicated Quentin's father in 1996. Later in 1996, appellant Tamara Lynn Hickey was involved in a confrontation with several other family members at the child's home. Appellant was convicted for domestic violence, and was evicted from the residence. Quentin remained in the residence with both appellees. Appellee John Paulik and appellee Delores Wietz filed a joint complaint for custody of Quentin in the juvenile court, and the father was granted an ex parte order of placement. Several weeks later, appellee John Paulik moved with Quentin from the child's original residence, leaving appellee grandmother in the home. In September of 1996, appellee Paulik picked up Quentin from the grandmother's residence following a visit, and was charged with DUI. Appellant arrived on the scene shortly thereafter, and was eventually charged with obstruction of official business. Appellee John Paulik was convicted of DUI and incarcerated for several months, during which time Quentin lived with his mother, the appellant.
The magistrate found appellant, appellee John Paulik, and appellee Delores Wietz's fiancee Ralph Harsh all have multiple DUI convictions. Appellant has been through outpatient drug treatment and continues to abuse alcoholic beverages. Between January 27, 1997 and April 9, 1997, police were called approximately 21 times, to appellant's home primarily by the neighbors for loud music. Appellant mother is in a relationship with a man whom both appellees believe is a negative influence on the minor child. The court found Quentin is a healthy ten year old who enjoys sports and maintains above average grades in school. His school attendance and deportment is excellent and he wishes to reside with both parents.
The magistrate found, citing In Re: Perales (1977), 52 Ohio St.2d 89, that both parents are suitable parents, and for this reason, appellee Delores Wietz may not receive custody of Quentin. The court cited R.C. 3109.04, and found based upon the factors cited in that statute, that it is in the best interest of Quentin for John Paulik to be the residential parent and legal custodian of Quentin. Both appellant and appellee Delores Wietz have companionship rights.
 I
In her first assignment of error, appellant argues the trial court should have refrained from entering judgment until the guardian ad litem filed a final report. Appellant concedes finding no case on point, but submits when a guardian ad litem is appointed to represent the interest of a child, by implication, no final determination of the action should be made until the guardian ad litem has submitted a final report and recommendation. Appellant did not provide the trial court or this court with a transcript of proceedings of the five day trial held before the magistrate. Appellees assert appellant cannot demonstrate this error in the record. What the record does show us is the magistrate heard five days of evidence, had at least an interim report from the guardian ad litem, and conducted an in camera
interview with the minor child. As appellee father correctly argues, the court appointed this guardian ad litem in this privately filed custody proceedings, not as an investigator for the court pursuant to R.C. 3109.04.
The first assignment of error is overruled.
 II
In her second assignment of error, appellant urges the trial court's decision constituted reversible error because of the original ex parte order obtained by appellee father at the commencement of the action. Appellant argues when appellees John Paulik and Delores Wietz filed their joint motion for custody, they each submitted an affidavit which implied appellant had relinquished primary care responsibility for her child to her mother, the child's grandmother. Appellant concedes the magistrate's decision establishes appellant, not the grandmother, was the child's primary care giver and custodial parent.
Given this court does not have a transcript of the evidence received before it, and because appellant does not assert the magistrate's findings of fact are actually incorrect, this court is unable to find error here. Appellant's assertion is that incorrect information furnished by both appellees resulted in the securing of an ex parte order which ultimately affected the outcome of the action. Appellant cannot demonstrate, and this court refuses to infer, that the ex parte order in favor of the father influenced the court's ultimate decision regarding the best interest of the child, particularly when the magistrate's findings correctly identify appellant as the primary caregiver.
The second assignment of error is overruled.
 III
In her third assignment of error, appellant argues the court erroneously admitted into evidence instances where an appellant was convicted of various misdemeanor charges involving appellee Delores Wietz and appellant's sister, which arose during the pendency of the custody proceedings herein. The court also admitted reports from the Massillon Police Department regarding numerous complaints lodged against appellant by her neighbors. Appellant characterizes the evidence as hearsay in violation of Rule 802 of the Ohio Rules of Evidence.
Again, appellant has not furnished either the trial court or this court with a transcript of the evidence, and Civ. R. 53 (E) prohibits a party from assigning as error on appeal the court's adoption of a finding of fact and conclusion of law unless the party has objected to the finding and conclusion under the Rule.
We find appellant has failed to preserve this error.
The third assignment of error is overruled.
 IV
In her fourth assignment of error, appellant urges the court erred in treating the matter as an initial award of custody as between a husband and wife or parents where there had been no previously established custody order, rather than applying standard appropriately to be applied in a change or modification of custody. Appellant submits she was the established custodian of the minor child both by circumstances and by virtue of the orders in the paternity proceedings which found appellee John Paulik to be Quentin's father.
In conclusion of law number nine of the magistrate's decision, the magistrate cites the standard to be applied as the best interest of the child standard and noted Quentin had lived with both of his parents for most of his life.
R.C. 3109.04 provides in pertinent part:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree
allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other persons who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2929.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is a reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a share parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or in planning to establish a residence, outside this state.
 (Emphasis added)
The Revised Code provides regardless of whether the court is making an original decree allocating parental rights and responsibilities or modifying a decree which allocated those rights and responsibilities, the court shall use the best interest of the child's standard, and consider the same factors.
We have reviewed the record, and we find the trial court did not err in adopting the magistrate's recommendations.
The fourth assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.
By Gwin, P.J., and Farmer, J., concur.
Hoffman, J., concurs separately.
______________________________
______________________________
 ______________________________ JUDGES
WSG:clw 0208