OPINION
William A. Rose and Linda S. Rose are the maternal grandparents of Christopher Michael Borders. They are appealing the award of custody of Michael to his father, Matthew Borders. The facts of the case and the reasoning of the trial court are fully explained in its judgment entry and order, the relevant portions of which are as follows:
 Temporary custody of Christopher Michael Border [sic] ("Michael" herein) was awarded his maternal grandparents, William A. Rose and Linda S. Rose, by this Court on January 31, 1997. This was done with the consent and agreement of his parents, Tammy Hay and Matthew Borders. The Complaint recited that Michael had been with the Roses since August 6, 1996, when Ms. Hay placed him there. In this case, she testified the reason was that her then husband, a Mr. Hay, was abusive to Michael and Mr. Borders was leaving for military boot camp. She testified that she did not intend for the placement to be permanent. Mr. Borders and Ms. Hay were never married.
 Subsequently on May 21, 1998, Ms. Hay and Mr. Borders, jointly, filed a motion to have the custody of Michael returned to them. On June 22, 1998, the Roses filed their own motion for custody. At a pretrial conference held July 14, 1998, the Roses requested the appointment of a Guardian ad litem and William F. Denkewalter was appointed by the Court.
 At the trial on the two motions, the attorney for the parents announced that the mother, Tammy Hay (now Roark) was no longer seeking custody but supported the motion of the father, Matthew Borders. She later testified that she had remarried, had another child and a step-child and couldn't handle Michael. She also later testified that Matthew Borders was a good father and that it was in Michael's best interests that he be with his father.
 Kent A. Eichenauer, Psy.D., Clinical Psychologist, testified concerning his evaluation based upon his interviews with the Roses and Michael. He readily admitted that since he was not able to interview Michael's mother and father that his evaluation was not complete. He did testify that he did not see the need for a change of custody since the Roses were appropriate. He also testified that if custody was given to Michael's father, that there would probably be a short-term detriment to Michael. However, he also said that kids are resilient which would tend to decrease the importance of the short-term detriment.
 The Guardian ad litem testified and found Matthew Borders to be "quite suitable." He also found the Roses to be suitable and said that they had cared well for Michael. He felt that a change of custody would not be in Michael's short-term best interests, as it was likely that there would be a short-term detriment. In the long-term, however, he felt the best interests of Michael favored the father.
 William and Linda Rose testified. Neither questioned Mr. Borders suitability but rather the timing of giving him custody. Cited as reasons were: the history of how Michael came into their care; Matthew Borders' financial struggle, his full schedule of work and schooling; and the current stability in Michael's life which may be fragile if disturbed.
 With the case in that posture, the Court offered mediation to determine when the right time would be for a change and how it should be implemented. This was agreed to by the parties. However, mediation failed to resolve these matters and the Roses subsequently moved for a supplemental court hearing for it to consider changes in Mr. Borders' circumstances, which they alleged may affect its decision.
 At the supplemental hearing, it was learned that Mr. Border's previous plans to remodel his parents [sic] house as a place to live had fallen through and that he now lives in a two-bedroom apartment.
 Mr. Borders also shares this apartment with Kathryn Baker and two of her children. They are not married. One of her children, Brandon, is said to have behavioral problems. Mr. Borders acknowledged this but testified that Brandon responded to his discipline. An incident was cited where Brandon caused an extensive fire. His mother, however, pointed out that he was only three at the time and that it was an accident.
 Testimony also revealed that Kathryn Baker is receiving social security disability because of depression. She testified and any adverse effects of this were not evident to the Court.
 Lastly there was also testimony suggesting that Mr. Borders may have hit Michael and may over-discipline him and Brandon. This was not established.
 Also at the hearing, Tammy Roark, Michael's mother, testified that she had changed her mind and no longer supports Matthew gaining custody of Michael. She is the daughter of the Roses and has recently been living with them. She testified that as a result, she has changed her mind because she now sees how well Michael gets along with the Roses.
 The Guardian ad litem declined to change his recommendation in his initial report which recommended that the Court grant custody of Michael to his father. He recommended a phase-in period for the change to lessen the impact on Michael. His report also stated that he had not interviewed Ms. Baker and did not address her children as an issue.
 The Court was requested to interview Michael. It did so in chambers but was unable to glean anything helpful from him.
 The argument by the Roses and Roark is now made that Matthew Borders' current living arrangements make him unsuitable because it is in Michael's best interest to stay with the Roses. Thus, it is argued that until this changes, the time is not right for reunification of father and son.
 The Roses also argue that this case should be considered as one where legal custody was granted to the Roses which should, therefore, continue unless there are changed circumstances. This is argued to avoid the application of the principle that suitable parents have a "paramount" right to custody of their minor children. See In The Matter of Kathryn Mears, 1996 Ohio App. LEXIS 2506 (1996 Second District) and In Re Custody of Carpenter, 41 Ohio App.3d 182 (Second District 1987) which adheres to the rule and discusses the distinction drawn when the custody is deemed "permanent" or "temporary."
 The Court's order in this case in its Entry dated January 31, 1997, specified "temporary custody" and also recited that "This matter is continued for hearing at a later date." The Court obviously meant temporary and Tammy Hay (Roark) testified that it clearly was her intent that the custody of the Roses was not to be permanent. Therefore, the Court shall apply the rule of the aforementioned cases here that gives parents a "paramount" right as long as they are suitable.
 This Court is of the opinion that the evidence presented does not establish, by a preponderance of the evidence, that Matthew Borders is an unsuitable father. It does not find that, in the long-term, the return of custody would be detrimental to the child. Any short-term detriment can, with time, be overcome. The Court is also of the opinion that Mr. Borders evidences that he genuinely cares for his son. Also, the resolve he is showing to put his life together is to be admired and can only benefit his son. He should be a positive role model for his son.
 Therefore, the Court orders and grants legal custody of Christopher Michael Borders to his father, Matthew Borders.
 The Court's judgment is not intended to in any way subordinate the considerable contribution the Roses have made to Michael's welfare. It has truly been significant and seems to the Court that it would be in Michael's best interests for a close relationship to continue to exist. The Court, therefore, also orders that the Roses shall have the right of reasonable and liberal visitation with Michael. The Court is not now more explicit as to the nature and extent of the visitation, but entreaties the parties to work out agreeable arrangements for the benefit of Michael.
On appeal, the Roses bring the following three assignments of error:
ASSIGNMENT OF ERROR NUMBER ONE
 THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT THE BEST INTERESTS OF THE CHILD WAS THE OVERRIDING ISSUE IN DETERMINING THE CUSTODY OF CHRISTOPHER MICHAEL BORDERS.
ASSIGNMENT OF ERROR NUMBER TWO
 THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE APPELLANTS HAD LEGAL CUSTODY WHICH COULD NOT BE CHANGED ABSENT A CHANGE OF CIRCUMSTANCES.
ASSIGNMENT OF ERROR NUMBER THREE
 THE TRIAL COURT ERRED IN FAILING TO ALLOW THE APPELLANT'S PSYCHOLOGIST TO INTERVIEW THE CHILD'S PARENTS.
Assignments one and two will be considered together, but first we will consider the third assignment. During the course of the trial proceedings, the Roses retained a psychologist who interviewed them and Matthew. They then moved the court to require Matthew's parents to be interviewed by the psychologist. This motion was opposed by the parents and denied by the trial court because of the finding that the "best interests" of the child is not the relevant standard when parents seek to regain custody from grandparents. The court followed decisions of this court by stating that: "The standard is whether the parents can be denied custody because they have abandoned the child, have contractually relinquished custody of the child, demonstrated a total inability to provide care or support for the child or whether they are otherwise unsuitable." In the Matter of KathrynMears (June 21, 1996), Clark App. No. 95 CA 116, unreported; In ReCustody of Carpenter (1987), 41 Ohio App.3d 182, 185. In Mears, we followed the rulings of the Ohio Supreme Court which has held that suitable parents have a "paramount right to the custody of their minor children" unless they have forfeited that right knowingly and intelligently. In Re Peralas (1977), 52 Ohio St.2d 89,97, 6 O.O.3d 293, 297, which cited Clark v. Bayer (1877),32 Ohio St. 299. The trial court was bound to follow the decision of this court and, therefore, it was correct in refusing to require a psychological interview of the parents by the Roses' retained psychologist.
The third assignment of error is overruled.
In the first assignment of error, the Roses attack the very standard that we have just set forth. However, we are not persuaded that we should abandon the rulings of our prior decisions as set forth above. The "best interests" tests of R.C.3109.04(E)(1)(a) applies in situations where parents have givenpermanent custody of a child to non-parents. Masitto v. Masitto
(1986), 22 Ohio St.3d 63, 66. Where a parent has surrendered only a temporary custody of a child to non-parents, they retain a paramount right to the custody of the child and need not overcome the heavy burden of the statute in order to regain custody.Mears, supra, at 2. Thus, the first assignment of error is inextricably intertwined with the second assignment of error, where the Roses argue that they in fact had legal custody and not simply temporary custody. The trial court, however, clearly found that it had awarded only temporary custody to the Roses, and that was the understanding of the parents at the time.
We note that a trial court's custody determination in a domestic relations case that is supported by competent, credible evidence, will not be reversed absent an abuse of discretion.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. The term "abuse of discretion" implies more than an error of law or judgment, it connotes an attitude on the part of the trial court that is arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. With regard to the review of custody matters, the Ohio Supreme Court has stated the following:
 The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted).
Miller v. Miller (1988), 37 Ohio St.3d 71, 74. See also Reynoldsv. Goll (1996), 75 Ohio St.3d 121, 124; Meyer v. Anderson (April 18, 1997), Miami App. No. 96CA32, unreported.
We find no abuse of discretion because the court's decision is, in fact, supported by competent, credible evidence. This evidence is set forth in the opinion of the court quoted above and also in the report of the guardian ad litem who had been appointed by the court in the early stages of this litigation. In his report, the guardian noted that: "The decision between a decent father who has maintained constant contact with his son versus grandparents who helped remedy a terrible situation with their grandson is difficult. In a case such as this, there is no `bad' person when considering the natural father versus the maternal grandparents." Report, docket 23. Nevertheless, the guardian ad litem recommended that the court grant Matthew Borders' motion for custody of his minor child, Christopher, and adhered to that recommendation in a subsequent, supplemental report made during the course of the proceedings. Given the utmost respect to the discretion by a trial court in custody matters (Miller, supra), we affirm its decision and overrule the first and second assignments of error.
The judgment is affirmed.
BROGAN, J. and KERNS, J.
(Hon. Joseph D. Kerns sitting by assignment of the Chief Justice of the Supreme Court of Ohio).