**In re BLAKE.**

[Cite as *In re Blake,* 151 Ohio App.3d 777, 2003-Ohio-899.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2002 CA 54.

Decided Feb. 28, 2003.

Laura Hornish–Schlosser, for appellants Michael and Roberta Skaggs.

Douglas W. Geyer, for appellees Amy and Tommy Blake.

WOLFF, Judge.

{¶ 1}  Michael and Roberta Skaggs appeal from a judgment of the Clark County Court of Common Pleas, Juvenile Division, which ordered them to pay attorney fees in the amount of $3,045.25 to their daughter, Amy Blake, and her husband, Tommy Blake.

{¶ 2}  The facts and procedural history of the case are as follows.

{¶ 3}  On April 13 through 16, 2001, the Skaggses cared for their grandson, Tommy D. Blake II ("Tommy"), at their home in Piqua. The circumstances surrounding this weekend are in dispute. The parties agree that Mrs. Blake, Tommy's mother, had left the marital home for a few days because of some discord in her relationship with her husband. According to the Blakes, Mrs. Blake had occasionally left for short periods of time when there was strain in their relationship. From April 13 through 16, 2001, Mr. Blake had not known where Mrs. Blake was, but he apparently had not doubted that she would return based on her previous conduct. According to Mr. Blake, he asked the Skaggses to care for Tommy over the weekend because he had to go to work. The Skaggses, on the other hand, claim that Mrs. Blake's whereabouts and her intentions about returning were unknown during this time. They also claim that Mr. Blake told them to "come get" their grandson because Mrs. Blake had

abandoned them. At the end of the weekend, Mrs. Blake picked Tommy up from her parents with police assistance.

{¶ 4} On April 18, 2001, Roberta Skaggs filed a complaint in the Miami County Court of Common Pleas, Juvenile Division, seeking custody of Tommy. The complaint asserted that Mrs. Blake had abandoned the child and had left no forwarding address. The complaint did not refer to Mr. Blake.

{¶ 5} A hearing was scheduled for August 14, 2001. The Blakes continued to permit the Skaggses to have visits with Tommy during the intervening months. According to the Skaggses, they had no discussions with the Blakes about the upcoming hearing. According to the Blakes, the Skaggses assured them that the custody proceedings had been dropped and that there would be no hearing. The Blakes claimed to have relied on these representations when they went on a planned family vacation to Mississippi over the scheduled hearing date.

{¶ 6} The hearing did proceed as scheduled, and the trial court awarded custody of Tommy to the Skaggses. Tommy was forcibly removed from the parents' custody upon the family's return from vacation. On August 22, 2001, the Blakes filed objections to the magistrate's decision awarding custody of Tommy to the Skaggses.

{¶ 7} The Miami County Court of Common Pleas held a hearing on the objections on August 27, 2001. The court's previous order awarding custody to the Skaggses was stayed, and Tommy was returned to his parents' custody. The parties agreed to transfer the case to the Clark County Court of Common Pleas, Juvenile Division.[1]

{¶ 8} In November 2001, the Blakes filed a motion to dismiss the Skaggses' complaint and a motion for attorney fees pursuant to Civ.R. 11. Shortly thereafter, the Skaggses voluntarily dismissed their complaint without prejudice. A hearing on the motion for attorney fees was held on May 21, 2002, at which time the Blakes apparently asked that the trial court consider awarding fees pursuant to R.C. 2323.51 as well as Civ.R. 11. The trial court determined that the Skaggses' claims had been frivolous and awarded attorney fees in the amount of $3,045.25.

{¶ 9} The Skaggses raise three assignments of error on appeal. The first two assignments are related and will be addressed together.

{¶ 10} "I. The trial court committed prejudicial error in finding that appellants did not have standing to bring their complaint for custody.

---

1. The evidence showed that Tommy had not been a resident of Miami County.

{¶ 11} "II. The trial court committed prejudicial error in finding that appellants' conduct was frivolous pursuant to [R.C.] § 2323.51(2)(b) [sic]."

{¶ 12} The Skaggses claim that the trial court erred in ruling that they had no standing to bring an action for custody of their grandson. In fact, the trial court did not address the issue of "standing" in its decision. Rather, it concluded that the Skaggses' conduct was frivolous as defined in R.C. 2323.51(A)(2) because the "overwhelming credible evidence" showed that the Skaggses' complaint for custody was not warranted under existing law and could not be supported by a good-faith argument for an extension, modification, or reversal of existing law. The trial court appears to have found the Skaggses' version of events to have been wholly lacking in credibility.

{¶ 13} It was undisputed that the Blakes had allowed the Skaggses regular visits with their grandson before and after the filing of the complaint. These visits seem to have frequently involved overnight stays on the weekends. Even if Mrs. Blake's whereabouts were unknown by her husband and parents during one such visit in April 2001, Tommy had apparently been returned to his parents' custody by the time of the filing of Mrs. Skaggs' affidavit on April 18, 2001, in which she claimed that he had been abandoned. Mrs. Skaggs admitted that they had proceeded with the home study after Tommy had returned to his parents' home. Moreover, Mrs. Blake's "erratic behavior," as it is described in the appellate brief, does not appear to have resulted in any lack of care for the child; he was left with his father. The trial court could have reasonably concluded that at no time had the Blakes' conduct supported an inference that they had intended to abandon Tommy. We also note that Ohio law clearly does not permit a nonparent to obtain custody of a child without showing the parents to be unsuitable. *In re Perales* (1977), 52 Ohio St.2d 89, 98, 6 O.O.3d 293, 369 N.E.2d 1047. Aside from the allegation of abandonment, which the trial court reasonably found to have been unsubstantiated and lacking in credibility, the Skaggses did not even allege in their complaint that either parent was unsuitable.

{¶ 14} Faced with a complaint lacking in arguable merit, the trial court did not err in finding that the complaint had been frivolous and in awarding attorney fees.

{¶ 15} The first and second assignments of error are overruled.

{¶ 16} "III. The trial court erred by awarding appellees attorney's fees under [R.C.] § 2323.51."

{¶ 17} The Skaggses claim that it was unfair for the trial court to award attorney fees pursuant to R.C. 2323.51 when the Blakes' motion had originally asked for fees only pursuant to Civ.R. 11 and the Skaggses had not had notice that the hearing would also involve R.C. 2323.51 until a trial memorandum was

filed on the date of the hearing. The memorandum in question is not a part of the record on appeal, but we do recognize that the initial motion addressed only Civ.R. 11.

{¶ 18} The Skaggses claim that they should have been given an opportunity to respond to the new argument presented in the Blakes' memorandum. The record, however, does not reflect an objection to this new argument. Moreover, the requirements for an award of attorney fees are similar. Civ.R. 11 requires "belief there is good ground to support" a complaint, whereas R.C. 2323.51 requires an action to be warranted under existing law or supported by a good-faith argument for an extension, modification, or reversal of existing law. These standards are not so dissimilar that we will presume that the Skaggses were prejudiced by the consideration of R.C. 2323.51. Moreover, they have presented no specific argument as to how they were prejudiced.

{¶ 19} The third assignment of error is overruled.

{¶ 20} The judgment of the trial court will be affirmed.

Judgment affirmed.

FAIN, P.J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 21} I agree that appellants, the grandparents, waived any error arising from the alleged lack of notice when they failed to object to appellees', the parents', additional reliance on R.C. 2323.51 in support of their Civ.R. 11 request for an award of attorney fees. However, I believe that the juvenile court applied a definition of "frivolous conduct" to then award fees pursuant to R.C. 2323.51 that is not supported by the record.

{¶ 22} R.C. 2323.51(B)(1) authorizes an award of attorney fees to a party who is "adversely affected by frivolous conduct" of another party to an action. R.C. 2323.51(A)(2)(a) defines frivolous conduct to mean, inter alia: "Conduct of (a) * * * party to a civil action * * * or the party's counsel of record that satisfies either of the following:

{¶ 23} "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal:

{¶ 24} "(ii) Is not warranted by existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

{¶ 25} The definition of "frivolous conduct" in R.C. 2323.51(A)(2)(a)(i) comprehends personal misconduct. Paragraph (ii) of the same section comprehends

something different; a claim for relief having no foundation in the law as it exists and which presents no basis to argue in good faith for a change in the law.

{¶ 26} The juvenile court awarded attorney fees against the grandparents on a finding that their "[c]omplaint for Custody filed in Miami County, Ohio was not warranted under existing law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law." (Entry at 4.) The court thus applied the definition of "frivolous conduct" in R.C. 2321.51(A)(2)(a)(ii). The court made no finding in the alternate grounds in paragraph (i) of that section.

{¶ 27} The law provides that the juvenile court has original jurisdiction of any child who is "neglected." R.C. 2151.03(A)(1). A "neglected child" is one who is "abandoned by his parents" or who "lacks proper parental care because of the faults or habits of his parents." R.C. 2151.03(A)(1), (2). Any person "having knowledge of a child who appears to be * * * neglected * * * may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement." R.C. 2151.27(A). Further, the complainant may seek custody of the child concerned. R.C. 2151.27(C).

{¶ 28} R.C. 2151.06 states that "a child has the same residence or legal settlement as his parents," legal guardian, or custodian. Tommy's parents resided in Clark County, not Miami County, when the grandparents filed their pro se custody petition in Miami County. The petition should have instead been filed in Clark County.

{¶ 29} When it awarded fees the court correctly identified the venue defect in the petition the grandparents had filed. However, that mere defect does not demonstrate that their claim "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." It is merely an error in the application of an existing law, one which is correctable and was corrected when the Miami County court ordered the case transferred to the Clark County Juvenile Court pursuant to Juv.R. 10(A), which specifically applies to cure venue defects relating to a child's residence.

{¶ 30} The court identified no other legal error, defect, or irregularity in the allegations of the petition for custody other than the venue defect noted. The parents point out that the grandmother's sworn petition falsely alleges that Tommy's "present address" is at the grandparent's home in Miami County. However, immediately following that entry she stated that Tommy had lived for the past five years at an address in Clark County, which is then identified as his parents' address. The same Clark County address is stated in the service request and in the caption of the petition in relation to Tommy's name.

{¶ 31} Seizing on this error concerning Tommy's "present address," the parents go on to argue that the sworn "complaint was based upon a totally false and perjurious affidavit filed by Roberta Skaggs claiming therein that the minor child, Tommy D. Blake, II, had been abandoned by his mother, was in the physical custody of the affiant in Miami County, Ohio, and that no forwarding address was provided. The affiant, Roberta Skaggs, filed the perjurious statement and affidavit with full knowledge that the child had not been abandoned and at all times relevant thereto knew that the child had been left with her as a care provider and for grandparent visitation as had been done on several past occasions throughout the life of the minor child." (Brief at 1.)

{¶ 32} The pro se petition that Roberta Skaggs filed was a preprinted form on which she made entries by hand. Her statements concerning her address, Tommy's address, and his parents' address were entered in response to inquiries on the form. In response to the question: "My concern/complaint is," Mrs. Skaggs wrote: "Mother left/abandont [sic] left no forwarding address."

{¶ 33} One might question whether Tommy was in fact "abandoned" when the grandparents filed their petition on April 18, 2001. His mother had appeared to retrieve him two days earlier, on Monday, April 16. However, Tommy had then been with his grandparents since Friday, April 13, because of his father's telephone call of April 12 asking them to come get Tommy because his mother had again disappeared and the father had to go to work. A good-faith argument could be made that, in support of their custody requests, Tommy was a child who "appeared to be neglected" as a result of these events, and that his grandmother's statement in the sworn petition of April 18 related to the circumstance that began the prior week and that had been resolved, such as it was, only two days before.

{¶ 34} Even if the abandonment claim is rejected on its merits as a basis for a finding of neglect that a custody request requires, there is an alternative definition of neglect for which a good-faith claim also might be made. R.C. 2151.03(A)(2) defines a neglected child as one who "lacks proper parental care because of the faults or habits of his parents." The preprinted petition lays out neither of those statutory definitions, but refers only to R.C. 2151.23 as a basis of a custody request. The court might, after hearing the evidence, have reasonably relied on the "faults/habits" prong of the definition of neglect to award custody, should it find the evidence was sufficient to make the finding required.

{¶ 35} Even with the defects that were present here, none of the legal reasons or factual allegations in the petition supports the trial court's finding that the petition the grandparents filed "is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law." R.C. 2323.51. None of the alleged defects in the

petition even remotely apply to that standard. Indeed, the preprinted form itself lays out a framework for a claim founded on existing law as it applies to custody requests of this kind.

{¶ 36} The court might instead have considered an award of attorney fees on the alternative definition of frivolous conduct: that the grandparent's conduct "obviously serves merely to harass or maliciously injure another party to the civil action or appeal." Though there's nothing to support that finding with respect to the grandparents' "conduct" in filing the custody petition, there is evidence that in the following months they intentionally misled the parents about the action, and may in bad faith have instigated Tommy's forcible removal from his parent's care. The trial court did not address that alternative, however, and we cannot ourselves make that finding.

{¶ 37} I would find that the trial court erred when it found "frivolous conduct" on the statutory grounds on which the court relied to award attorney fees, and in consequence would sustain appellants' second assignment of error and reverse the judgment and vacate the award.