OPINION
{¶ 1} John and Gloria Davenport appeal from a judgment of the Montgomery County *Page 2 
Court of Common Pleas, Domestic Relations Division, which designated Jamey Tyler Holbrook ("Jamey") as the residential parent and legal guardian of Jacob Holbrook ("Jacob"). For the following reasons, the judgment of the trial court will be AFFIRMED.
 I. {¶ 2} Jacob is nine years old. Jamey is Jacob's father, and the Davenports are Jacob's maternal grandmother and step-grandfather. Amber Holbrook is Jacob's mother and the Davenports' daughter. When Amber and Jamey were divorced in 2003, Amber was designated as Jacob's residential parent. Jamey visited with Jacob under the standard order of visitation, paid child support, and provided health care coverage.
 {¶ 3} In early 2004, Amber and Jacob moved in with the Davenports. In November 2005, the Davenports filed motions for interim temporary custody of Jacob and for a change in custody. Their motions included their own affidavit and one from Amber stating that neither Amber nor Jamey was "emotionally and/or physically [able] to care for Jacob at the present time." The Davenports further alleged that they had cared for Jacob for "a vast majority" of his life and that Jamey had not exercised parenting time for several months. In response, Jamey sought to be named the residential parent.
 {¶ 4} The trial court granted temporary custody to the Davenports, appointed a guardian ad litem, and scheduled a hearing on the allocation of parental rights. The hearing was held before a magistrate on August 15 and December 19, 2006, and on March 9, 2007.
 {¶ 5} Following the hearing, the magistrate named Jamey as Jacob's residential parent and legal guardian and awarded the Davenports visitation with Jacob two full weekends per month. The magistrate ordered that Amber's visitation with Jacob should coincide with her *Page 3 
parents' visitation. The magistrate also ordered that Jacob continue with counseling, that Jamey attend an anger management class, and that Amber pay child support.
 {¶ 6} The Davenports filed objections to the magistrate's decision and findings of fact, and they ordered a transcript of the hearing. They did not pay the deposit for the transcript, however, and no transcript was prepared. Accordingly, the trial court concluded that it could not review the magistrate's findings of fact, and it overruled the Davenports' objections to the magistrate's decision.
 II. {¶ 7} The Davenports raise one assignment of error on appeal.
 {¶ 8} "THE TRIAL COURT ERRED IN THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES."
 {¶ 9} The Davenports contend that the trial court committed "factual errors" and that there was insufficient evidence to support its conclusion. Specifically, they contend that "Jamey never made any effort to contact or see his son for an extended period of time * * * [and] that Jamey's accusations about being denied time with Jacob ring hollow." They have filed a transcript of the hearing with their appeal.
 {¶ 10} The Supreme Court of Ohio has held that the standard for resolving a custody dispute between a parent and a non-parent is different from the best interest standard set forth in R.C. 3109.04, which deals with custody disputes involving the allocation of parental rights between two parents. In re Perales (1977), 52 Ohio St.2d 89, 96,369 N.E.2d 1047. "Although divorce custody proceedings involving disputes between two parents are logically best served by looking only to the welfare of the child, the court's scope of inquiry must, of necessity, be *Page 4 
broader in * * * custody proceedings between a parent and a non-parent, which bring into play the right of the parent to rear his own child." Id. See, also, Clark v. Bayer (1877), 32 Ohio St. 299. A court may not award custody of a child to a nonparent rather than a parent without first making a finding of parental unsuitability, "that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Perales, 52 Ohio St.2d at 89.
 {¶ 11} The Davenports apparently attempted to show that Jamey had abandoned Jacob by not visiting with him over a period of time or that an award of custody to Jamey would be detrimental to Jacob. The magistrate findings of fact on these issues can be summarized as follows.
 {¶ 12} There was an extensive history of bad blood between John Davenport and Jamey and between Amber and Jamey. Jacob witnessed much of this animosity, and it had adversely affected him. However, there was no evidence that Jamey's anger was ever directed at Jacob. His anger was usually directed at John Davenport and appeared to have been rooted in Jamey's frustration with not being able to parent Jacob and his reaction to Amber's and the Davenports' deception about who was caring for Jacob.
 {¶ 13} The magistrate concluded that neither the Davenports nor Amber advised Jamey that the Davenports had become Jacob's primary caregivers when Amber entered Nova House for treatment. In fact, the Davenports lied to Jamey about where Amber was when he picked up Jacob and misrepresented to him that she was still living in the household. Additional animosity *Page 5 
arose when the Davenports accused Jamey's stepson, Forrest, of endangering Jacob with a knife during a visit. The magistrate concluded that this accusation was not supported by the evidence. After this incident, however, Jamey did not have parenting time with Jacob for six months or more. The parties offered differing explanations for Jamey's lack of parenting time. The Davenports claimed that Jamey did not call for parenting time, whereas Jamey and his wife claimed that the Davenports would not allow parenting time despite numerous attempts on their part.
 {¶ 14} The Davenports also accused Jamey of drug and alcohol abuse. However, Jamey had worked for the same employer for many years and had undergone periodic drug tests as part of his employment. There was no evidence of drug or alcohol abuse. Jamey had failed only one test — because he had consumed alcohol the day before — but no disciplinary action was taken by the employer.
 {¶ 15} Jamey's home could accommodate Jacob living there full-time and, according to Jamey and his wife, Jacob got along well with his step-mother and Forrest. Jamey participated in anger management classes as recommended by the guardian ad litem. Jamey's wife reported that the classes were helping Jamey to focus on Jacob's needs and to avoid letting John Davenport bait him into losing his temper.
 {¶ 16} The guardian ad litem recommended that Jamey be named the residential parent and that Jacob be allowed regular visitation with the Davenports. The guardian ad litem also recommended that Amber's parenting time be exercised during Jacob's visits with the Davenports, that Jacob continue to receive counseling, and that Jamey attend an anger management class. *Page 6 
 {¶ 17} Based on this evidence, the magistrate named Jamey as the residential parent, awarded substantial visitation to the Davenports, and followed the guardian ad litem's recommendations with respect to Amber's visitation, Jacob's counseling, and Jamey's anger management classes.
 {¶ 18} When the Davenports filed their objections to the magistrate's decision with the trial court, they stated very generally that the magistrate had made improper findings of fact and conclusions of law, that the decision was against the manifest weight of the evidence, that the magistrate applied the incorrect legal standard, and that "other issues" would be presented when the transcript was complete. However, the Davenports failed to remit a deposit for the transcript, and thus it was not prepared. They never presented more specific arguments.
 {¶ 19} The trial court overruled the Davenports' objections for two reasons. The first was the lack of a transcript, which made it impossible to review the objections to the magistrate's factual findings. Second, the court concluded that the Davenports' objections did not satisfy the requirement set forth in Civ. R. 53(E)(3)(b) that objections "be specific and state with particularity grounds of objection." Thus, the trial court adopted the magistrate's decision with only minor modifications.
 {¶ 20} On appeal, the Davenports have filed a transcript of the hearing before the magistrate. They again argue that the evidence did not support the conclusion that Jamey was a suitable parent and that the trial court did not conduct a proper analysis of Jacob's best interest.
 {¶ 21} Although the Davenports have included a transcript on appeal, they did not provide a transcript to the trial court when they presented their objections to the magistrate's decision. When a party objecting to a magistrate's decision fails to provide the trial court with *Page 7 
the evidence and documents by which the court could make a finding independent of that decision, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the magistrate's conclusions; the appellate court is precluded from considering the transcript of the hearing submitted for the first time on appeal. State ex rel. Duncan v. Chippewa Twp. Trustees,73 Ohio St.3d 728, 730, 1995-Ohio-272, 654 N.E.2d 1254; High v. High (1993),89 Ohio App.3d 424, 427, 624 N.E.2d 801; Civ. R. 53(D)(3)(b)(iii-iv). In other words, the Davenports cannot seek a review of the factual conclusions underlying the magistrate's decision in their appeal to this court when they did not avail themselves of the procedures available in the trial court for review of those conclusions. Thus, we will not examine the transcript to determine whether the magistrate's factual conclusions were reasonable. We will consider only whether the factual conclusions in the magistrate's decision supported the trial court's judgment that Jamey was a suitable parent for Jacob.
 {¶ 22} The magistrate found that Jamey had a well-established, devoted relationship with Jacob, although his strained relationship with his in-laws had sometimes interfered with their time together. The magistrate also found that the Davenports had been dishonest with Jamey in an effort to limit his involvement in Jacob's life. Furthermore, the magistrate concluded that Jamey held a steady job, could provide appropriate housing and care for Jacob, did not have a drug or alcohol abuse problem, and responded well to anger management classes. The magistrate also recognized the important role that the Davenports played in Jacob's life.
 {¶ 23} Based on the evidence recounted by the magistrate, there does not appear to have been any basis to conclude that Jamey was an unfit parent. As such, the trial court did not abuse its discretion in adopting the magistrate's decision that Jamey was entitled to custody of his son. *Page 8 
 {¶ 24} The assignment of error is overruled.
 III. {¶ 25} The judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1