This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Eli Petersheim, has appealed from the order of the Wayne County Court of Common Pleas, Juvenile Division, that granted custody of his child to Appellee, Jackie Buffington. We affirm.
On May 18, 1997, Pamela Reed ("Reed") gave birth to Joseph Reed ("Joseph"), the son of Appellant. Appellant was at the hospital when Joseph was born and he signed the birth certificate. On August 25, 1997, the Wayne County Child Support Enforcement Agency ("WCCSEA") ordered Appellant to pay monthly child support based on Appellant's signature on the birth certificate. Appellant timely objected to the order. WCCSEA sustained Appellant's objections and modified the amount of monthly child support.
On February 8, 1999, Appellee, Joseph's maternal grandmother, moved to obtain custody of Joseph. The trial court granted Appellee temporary custody, pending a hearing. Reed moved to vacate the order of temporary custody and moved to dismiss Appellee's motion. Reed argued that Appellee did not have standing to bring the motion because she was not a party to the action. On April 26, 1999, Appellee moved to intervene in the action on the basis that Joseph had been living with her and she had been caring for him since February 1998. Also, Paul Kelley, Reed's previous boyfriend, moved to intervene, arguing that he was Joseph's father. He requested court-ordered DNA testing.
On May 24, 1999, the trial court granted Appellee's motion to intervene. The court granted Kelley's motion to intervene for purposes of DNA testing. The DNA test results indicated a "0" probability that Kelley was Joseph's father. The trial court placed Joseph in the legal custody of Appellee and granted visitation to Reed. All attempts to serve Appellant with notice of the hearings were returned because the notices were undeliverable due to the lack of a forwarding address.
On August 1, 2000, Appellant moved for allocation of parental rights and responsibilities. After a hearing, the trial court found that Joseph was to remain in Appellee's custody. The court granted visitation to Appellant. Appellant timely appealed, raising one assignment of error for review.
 ASSIGNMENT OF ERROR The trial court erred by failing to name a child's father as his primary residential parent in a custody dispute with a non-parent when there was no showing that the father was unsuitable.
In his sole assignment of error, Appellant argues that the trial court erred in granting custody to a nonparent because there was no evidence of his unsuitability as a parent. We disagree. This Court notes that Appellant does not challenge the trial court's findings with respect to the best interests of the child. Accordingly, this Court will only address the trial court's determination of unsuitability.
"In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important."Trickey v. Trickey (1952), 158 Ohio St. 9, 13. In Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, the Supreme Court of Ohio stated:
 The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.
(Citations omitted.) We will therefore review the trial court's order under an abuse of discretion standard.
In custody proceedings between a parent and a nonparent, custody may not be awarded to the nonparent without first determining that the parent is unsuitable. In re Perales (1977), 52 Ohio St.2d 89, syllabus. The court shows unsuitability by concluding "that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id.
Upon a review of the record, we find that the trial court found that Appellant was unsuitable as a parent, prior to granting custody to Appellee. Additionally, the trial court found that placement with Appellant would be detrimental to Joseph. The court's findings are supported by competent evidence as presented at the hearing on this matter. In reaching this decision, we are mindful of the fact that the trial court, after carefully listening to the testimony of the parties and witnesses, is in the best position to judge their credibility and to determine whether a parent has abandoned his or her child. Reynolds v.Goll (1996), 75 Ohio St.3d 121, 124.
The testimony presented at the hearing indicated that in the month following Joseph's birth, Appellant visited him two or three times. However, from June 1997 until Appellant filed his motion for allocation of parental rights on August 1, 2000, Appellant made no attempt to visit his son. Appellant testified that no one prevented him from seeing his son. However, he claimed he did not visit because Appellee and Kelley had told Appellant that he was not Joseph's father.
Although Appellant claims that he questioned whether he was Joseph's father, the record indicates that with regard to the order for child support, the only objection filed by Appellant went to the amount of the monthly payment and not to the paternity determination. Further, after Appellant relocated, he failed to advise WCCSEA of the subsequent changes in his address and employment, as ordered. More importantly, Appellant did not pay the child support as ordered. At the time of the hearing, Appellant was arrears in his child support payments in the amount of $7,467.11. Appellant provided no support or necessities for Joseph until he filed his motion in August 2000.[1] Although Appellant was aware that Joseph was residing with Appellee, he made no attempt to become involved in his son's life during that time.
At the time of the hearing on Appellant's motion, he had visited Joseph on seven different occasions for a total of thirteen hours. Although Appellant was requesting custody of Joseph, he testified that he never inquired as to Joseph's daily routine or his medical needs. Further, Appellee testified that after the visits with Appellant started, Joseph began to wet the bed and wet his pants at school. Also, she testified that he began to have nightmares. The testimony of Appellant, Appellee, Kelley and Reed support the conclusion that Joseph is comfortable in Appellee's home and receives good care.
Accordingly, upon review of the evidence, as highlighted above, the trial court's determination that Appellant was unsuitable was not an abuse of discretion. Furthermore, we find the trial court did not abuse its discretion in finding that a grant of custody to Appellant would be detrimental to the child. Appellant's assignment of error is without merit.
Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ LYNN C. SLABY
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] After Appellant filed the motion for allocation of parental rights and responsibilities, he purchased shoes and an outfit for Joseph.