OPINION
This timely appeal arises from the trial court's judgment granting custody of minors Britni and Anthony Miley to their maternal grandparents, Tony and Jean Morelli, ("grandparents") and granting their father, Marion K. Miley, ("father") two weeks summer visitation. The children's mother, Teri L. Miley, is deceased. For the following reasons, we reverse the judgment of the trial court and remand this cause for further proceedings.
Father and the former Teri L. Morelli established a relationship in March, 1987 while both were living in Louisiana. (Tr. pp. 43-44). The couple's first child, Britni, was born June 25, 1988, at which time the couple was not married. (Tr. p. 42). The couple married on March 29, 1990, and a second child, Anthony, was born May 21, 1990. (Tr. p. 42). Until May 1997, they resided together in Louisiana. (Tr. p. 44).
On or about May 12, 1997, a confrontation occurred between the parties when Teri objected to father disciplining Britni. (Tr. p. 45). Father testified at hearing that he smacked Britni one time with his hand because Britni was "back-talking" her mother and father. (Tr. pp. 44-45). As a result of this incident, both father and Teri were charged with domestic violence although the charges were later dismissed. (Tr. pp. 46, 52). Because there was an ex-parte protection order against him, father was staying with his brother-in-law. (Tr. pp. 48-49, 51). During this time, Teri and the children moved to Ohio without informing father. (Tr. p. 51).
Prior to Teri's death, father had open communication with his children and discussed reconciliation with Teri. (Tr. pp. 55, 56). The parties did not reconcile and father filed for divorce in Louisiana on or about August, 1998. (Tr. p. 58). Teri became ill in October, 1998. (Tr. p. 59). On October 15, 1998, father signed a power of attorney to permit grandparents and their son, Todd Morelli, and his wife to secure necessary medical treatment for father's children. This document was to last one month. (Defendant's Exhibit 5). Also on October 15, 1998, grandparents filed complaints in the Jefferson County Juvenile Court seeking custody of the children. That same day, the trial court filed ex parte orders granting custody of the children to grandparents during the pendency of the action.
Teri passed away on November 10, 1998. Father attended the funeral where he discussed custody of the children with grandparents. (Tr. pp. 63, 64). Father expressed his understanding that his children had been through a traumatic experience and to avoid further disruption he wanted his children to remain with their grandparents through Thanksgiving and Christmas and to complete the school semester in Ohio. (Tr. pp. 64). Since Teri's death, father's contact with his children was limited. (Tr. pp. 66, 69).
The trial court conducted a custody hearing on July 7, 1999. On July 26, 1999, the trial court filed findings of fact and conclusions of law finding that father was not a suitable parent and that it was in the children's best interest to be in the custody of their grandparents. On August 5, 1999, the trial court filed a judgment entry granting custody of the children to grandparents and granting father two weeks of summer visitation with his children. Father filed his timely notice of appeal. Grandparents have not filed a brief in this matter and, therefore, we may accept father's statement of facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain this action. App.R. 18(C).
Father's first assignment of error alleges:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN NOT AWARDING APPELLANT CUSTODY OF HIS TWO MINOR CHILDREN."
Father argues that a non-parent may not be awarded custody without first determining that the parent abandoned the child, contractually relinquished custody, was totally unable to provide care or support, or that the parent is otherwise unsuitable. In re Perales (1977),52 Ohio St.2d 89, 98. Father contends that the welfare of the children is the first consideration and suitable parents have a paramount right to custody of their children unless that right has been forfeited by contract, abandonment, or by becoming totally unable to care and support the children. Id., 97. Father contends that the trial court's decision was not supported by evidence that he is not a suitable parent. Based on the record before us, this assignment of error has merit.
In a custody dispute between a parent and non-parent which originates in juvenile court pursuant to R.C. § 2151.23, the trial court must find the parent unsuitable prior to awarding custody to a non-parent.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 123, citing In re Perales,supra, 97. Parents who are deemed suitable have a "paramount" right to custody of their minor children. Id. In order to make a determination of unsuitability, the trial court must determine, "* * * that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." In re Perales, syllabus of the court. The trial court's determination will be upheld on appeal if there is some reliable, credible evidence to support its finding. Masitto v. Masitto (1986),22 Ohio St.3d 63, 66 citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
In its findings of fact and conclusions of law filed on July 26, 1999, the trial court stated as a finding of fact that, "[a]warding custody of the minor children to [Appellant] would be detrimental to the children." The trial court also stated as a conclusion of law that, "[t]he preponderance of evidence in this case establishes the unsuitability of the parent * * *." The trial court's conclusion seems to be based on findings relating to father's temper and manner of disciplining his children (Tr. pp. 44-45), the discovery of what is described as a pornographic magazine at father's home (Tr. pp. 24, 91), the discovery of hemostats which father had used for smoking marijuana in the past but now used in his electrical trade (Tr. p. 27) and the fact that father's stepfather is a convicted sex offender (Tr. p. 10). However, the trial court made no direct correlation between its findings of fact and its conclusion that father gaining custody of his children would be detrimental to them. The record contains no direct testimony, by experts or otherwise, that it would be detrimental to the children if father had custody. There is no evidence that the children had ever seen the magazine in question. There is no evidence that the children were ever exposed to father's past drug use, which he testified ended eight or ten years prior to the hearing. (Tr. pp. 27, 88). Father testified that he does not welcome his stepfather into his home and that his children would have no contact with him. (Tr. pp. 86-87). With respect to excessive discipline, father has never been charged with or investigated for child abuse, (Tr. p. 87), despite the dismissed domestic violence charge. Moreover, there is no evidence that father's manner of discipline ever rose to the level of child abuse. See, R.C. § 2919.22
Testimony at trial may suggest that we are not presented with an ideal father, or that he may not provide his children with an ideal lifestyle. Grandmother testified that she wanted her grandchildren to, "* * * have a better life, a more normal life, a — structured life, like all of our friends and everybody we know * * *." (Tr. p. 195). This does not warrant a conclusion that father is not suitable. A court must measure the concept of suitability in terms of the harmful effect of custody on the child, "* * * rather than in terms of society's judgment of the parent * * *." In re Perales, supra, 98. In fact, grandparents presented testimony that clearly indicates that they did not seek custody of the children because father was unsuitable. Grandfather offered testimony indicating that he and his wife were seeking custody only because the children wanted to remain in Ohio. (Tr. pp. 234-235). In fact, grandfather's testimony indicates that he believed father would be a suitable parent, as long as he moved to Ohio and lived in a house provided by grandparents. (Tr. p. 235).
Our review of the testimony and exhibits presented at hearing does not reveal evidence establishing that father is not a suitable parent. At best, the evidence indicates that he may be a less than ideal parent with a short temper and a past which included drug use and other transgressions. However, there is nothing on the record stating that granting custody of the children to father would be detrimental to them. Rather, the tenor of grandparents' complaint and the evidence suggests that father's lifestyle and station is disagreeable to them. These differences cannot be the basis of a parent's forfeiture of his paramount right to custody of his children. Accordingly, we sustain this assignment of error.
Father states as his second assignment of error:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN ONLY AWARDING APPELLANT TWO WEEKS OF SUMMER VISITATION."
Father argues that the Rules of Court for Jefferson County state that the non-residential parent shall have visitation for the first half of the summer each year when the non-residential parent lives a far distance away. Based upon this rule, father contends that he should have been granted more than two weeks of visitation each summer. Father is correct in this argument.
Decisions involving visitation are within the sound discretion of the trial court and upon review, an appellate court will not disturb such a decision absent a showing of an abuse of discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Buckles v. Buckles (1988),46 Ohio App.3d 102, 108. Furthermore, in matters involving visitation, the trial court must exercise its discretion in a manner that protects the best interests of the child. Bodine v. Bodine (1988),38 Ohio App.3d 173, 175.
R.C. § 3109.051(F)(2) states that each common pleas court shall adopt visitation guidelines from which the court may deviate based upon the factors listed in R.C. § 3109.051(D). The Jefferson County visitation guidelines provided to us provide in pertinent part that the non-residential parent shall have visitation with the children for the last half of summer each year. The guidelines provide that when the children are involved in extra-curricular activities at school, such as athletics, and the non-residential parent lives at such a distance from the children that summer visitation would preclude the participation by the children in such activities, then the non-residential parent shall have visitation for the first half of the summer each year.
Father was granted two weeks of summer visitation in Ohio and other visitation as he and grandparents could agree to in advance. There is no evidence on the record that the trial court considered the appropriate factors contained in R.C. § 3109.051(D) when deviating from the Jefferson County visitation guidelines. Father stated on the record that he only had one week of vacation time. (Tr. p. 245). It follows that the duration and location of summer visitation with father is unreasonable. Accordingly, the trial court abused its discretion in crafting the visitation order. We therefore sustain father's second assignment of error.
For all the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded to the trial court for termination of the grandparents' custody and to award custody to father in this matter. The matter is also remanded for determination of grandparents' visitation. The custody and visitation order issued by the trial court on August 5, 1999 is hereby vacated.
 _________ WAITE, J.
Vukovich, P.J., concurs.
Donofrio, J., concurs.