OPINION
Appellant, Tenisha Farrow, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting legal custody of her daughter, Makayla Farrow, to Makayla's paternal grandparents, Gary and Pam Noll ("Nolls"). Appellant advances the following three assignments of e rror for our review:
 1. The trial court erred in sustaining the decision of the Magistrate in awarding legal custody to the paternal grandparents.
 2. The trial court erred in finding that, the decision of the magistrate in failing to consider the natural mother for legal custody, was harmless error.
 3. The trial court erred in sustaining the decision of the magistrate in failing to establish a visitation schedule for the biological mother.
Makayla was born out of wedlock to appellant and John Barr on February 20, 1999. On November 30, 1999, Franklin County Children Services ("FCCS") filed a complaint alleging that Makayla was a neglected and dependent child. Specifically, the complaint alleged, inter alia, that appellant: lacked parenting skills; was transient and lived with various relatives and friends; had problems controlling her temper; reported extreme ongoing domestic violence with her then boyfriend, James Madison, to the extent that she had a miscarriage as a result of a beating she received from him; had previously been involved with FCCS on five occasions since April 1999 due to issues of neglect, physical abuse, and dependency; and had been avoiding the FCCS investigator and p reventing FCCS further contact with Makayla.
During the preliminary hearing on December 8, 1999, the court issued a stay away order between Makayla and Madison and placed Makayla under the court ordered temporary protective supervision of FCCS. On December 14, 1999, Court Appointed Special Advocates ("CASA") was appointed guardian ad litem for Makayla.
At an uncontested hearing before the magistrate on January 20, 2000, Makayla was found to be a neglected and dependent child pursuant to R.C.2151.03(A)(2) and 2151.04(C), respectively. In addition, the stay away order between Makayla and Madison was maintained, and Barr was granted visitation. The trial court a dopted the magistrate's decision by entry dated January 27, 2000.
At the dispositional hearing on February 11, 2000, the magistrate reaffirmed the finding that Makayla was a neglected and dependent child, granted temporary custody to Barr pursuant to R.C. 2951.353(A)(2), and placed Makayla under the court-ordered protective supervision of FCCS pursuant to R.C. 2951.353(A)(1). The magistrate also adopted the FCCS case plan as an order of the court and set the matter for annual review on November 15, 2000. By judgment entry filed February 22, 2000, the trial court adopted t he magistrate's decision.
On August 2, 2000, FCCS filed a case progress report informing the court that appellant had violated the stay away order by permitting Makayla to be near Madison. On August 8, 2000, the Nolls filed a motion for legal custody of Makayla. John and Betty Peterman ("Petermans"), maternal great-grandparents, filed a motion for legal custody of Makayla on September 15, 2000. At the preliminary hearing held that same day, the court ordered a ppellant's visitation changed from unsupervised to supervised.
The annual case plan review, as well as the two custody motions, were brought before the magistrate in an eleven-day trial commencing on November 15, 2000, and ending on January 29, 2001. By decision filed February 1, 2001, the magistrate granted legal custody to the Nolls and terminated the court-ordered protective supervision. In addition, the magistrate recommended that supervised visitation between appellant and Makayla be determined a t the discretion of the Nolls.
Appellant filed pro se objections to the magistrate's decision on February 9, 2001. On April 27, 2001, appellant's counsel filed supplemental objections. By decision and entry filed June 29, 2001, the trial court overruled the objections and adopted the magistrate's decision. Appellant has timely appealed the trial c ourt's judgment.
By her first assignment of error, appellant contends that the trial court improperly awarded legal custody of Makayla to the Nolls. Specifically, appellant contends that the trial court improperly applied the standard of best interest of the child in determining whether legal custody of Makayla should have been awarded to nonparents such as the Nolls. Appellant argues that in order for the trial court to award custody to nonparents, the court was required to make a finding that appellant is an unsuitable parent.
Preliminarily, we note that appellant never raised this issue before the trial court. During the course of the eleven-day hearing before the magistrate, all parties to the action consistently referred to the best interest of the child standard. Furthermore, appellant did not challenge the magistrate's application of this standard in either her pro se or supplemental objections to the magistrate's decision. In the interests of justice, however, we will address the issue.
In support of her argument, appellant cites In re Perales (1977),52 Ohio St.2d 89, which holds at the syllabus:
 In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.
Appellant's reliance on Perales is misplaced, however, as that case is distinguishable from the instant matter. Specifically, Perales involved a private custody matter between the child's natural mother and a nonparent with whom the child had lived most of her life. In contrast, the instant case involves custody proceedings regarding a child who has been adjudicated as a neglected and dependent child. In such cases, the standard to be u tilized is set forth in R.C. 2151.417(B) and 2151.42(A).
R.C. 2151.417(B) states, in relevant part:
 If a court issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code, the court has continuing jurisdiction over the child as set forth in division (E)(1) of section 2151.353 of the Revised Code. The court may amend a dispositional order in accordance with division (E)(2) of section 2151.353 of the Revised Code at any time upon its own motion or upon the motion of any interested party. The court shall comply with section 2151.42 of the Revised Code in amending any dispositional order pursuant to this division.
R.C. 2151.42(A) states:
 At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parent's, shall consider whether it is in the best interest of the child.
As noted previously, the court adjudicated Makayla a neglected and dependent child and awarded temporary custody to the natural father with protective supervision as an order of disposition under R.C. 2151.353. Both the Nolls and the Petermans filed motions seeking to amend that order of disposition. Pursuant to R.C. 2151.417(B), the court was required to comply with R.C. 2151.42(A) in amending its dispositional order. In accordance with R.C. 2151.42(A), the court was obligated to consider whether i t was in Makayla's best interest to be returned to her parents.
The same result has been reached, although for slightly different reasons, by the Fourth District Court of Appeals. In In re Johnson (1995), Ross App. No. 94CA2003, the court was faced with an argument identical to the one raised by appellant herein — that a trial court could not award temporary custody of a child to the child's paternal grandparents unless the trial court first found the mother unfit to have custody of her child. The court disagreed with the mother's contention, finding, upon review of several cases involving custody awards pursuant to R.C. Chapter 2151, including Perales, that the best interest of the child remained the primary standard to be applied in such cases. The court also found that although the unsuitability of the parents to have custody of the child was a factor that a trial court hearing a child dependency and neglect action pursuant to R.C. Chapter 2151 must consider, a trial court need not expressly find the parents to be unsuitable before awarding custody to a nonparent, reasoning that a finding that a child is neglected or dependent i mplied unsuitability of the parents.
Accordingly, the court found that the R.C. Chapter 2151 statutory scheme in neglect and dependency cases incorporated the concept that only unsuitable parents should be deprived of their children and, accordingly, found no error with the fact that the trial court awarded temporary custody of the child to his paternal grandparents without first making an explicit finding that the mother was unfit to have custody of her son. See, also, In re Gordon (1996), Gallia App. No. 96CA01 (express finding of parental unfitness not mandatory prerequisite to divesting natural parents of their custody rights; rather, pertinent inquiry is whether it is in the child's best interest to divest such rights from the natural parents); In re Brown (2001), 142 Ohio App.3d 193,198 (standard to be applied when determining whether to grant custody of previously adjudicated dependent or neglected child to n onparent is best interest of child).
In accordance with R.C. 2151.417 and 2151.42(A) and applicable case law, the trial court in the instant case properly applied the best interest of the child standard in determining with whom legal custody of Makayla should be placed. The court expressly found that Makayla's best interest would be served by awarding legal custody to the Nolls. Appellant does not challenge the court's determination in this regard, and, in any event, our review of the record convinces us that there was sufficient evidence to support that ruling. For the foregoing reasons, appellant's first a ssignment of error is not well-taken.
By the second assignment of error, appellant contends that the trial court erred in determining that the magistrate's failure to consider returning Makayla to appellant constituted harmless e rror. We disagree.
In her objections to the magistrate's report, appellant argued that the magistrate failed to consider returning Makayla to her care based upon an erroneous finding that appellant was required by law to file a motion for custody. Appellant based her c ontention on the following statements of the magistrate:
 Sustained. Particularly in light of the fact that the mother, although the focus of the hearing, hasn't filed anything. She's not ready. She hasn't filed anything.
* * *
 * * * I know I've let it go on for eleven days but what does this have to do with whether * * * Ms. Peterman * * * gets custody? You keep talking about Tenisha Farrow who does not have custody and has not filed for it. I'm tired of hearing about her, basically. [Tr. Vol. 11, pp. 41-43.]
The trial court reviewed the magistrate's statements and determined that even if the magistrate erred in finding that appellant was required to file a motion for custody of Makayla, the error was harmless, as the evidence revealed that the magistrate had considered and rejected the possibility of reunifying appellant and Makayla and, further, that the evidence demonstrated that returning Makayla to appellant's care would not b e in Makayla's best interest.
Initially, we note, as did the trial court, that the magistrate's comments were made on the final day of trial, after the magistrate had heard volumes of testimony regarding appellant's ability, or inability, to appropriately parent Makayla. Further, we note that at no time during the trial did appellant ever request Makayla be returned to her care, nor did she assert that she was prepared to care for Makayla on her own. Indeed, in closing argument, appellant's counsel admitted that appellant did not believe she was ready to parent Makayla and that it was in Makayla's best interest to be placed in the custody of the Petermans. Thus, it was reasonable for the magistrate not to consider appellant, given that she did not assert that reunification was in Makayla's best i nterest.
Further, upon review of the record, we find that the evidence supports the trial court's determination that the magistrate ultimately considered the possibility of reunifying appellant and Makayla. The magistrate specifically addressed the fact that the hearing consisted of an annual review of the dispositional orders in addition to the two custody motions. As such, the magistrate was required by R.C. 2151.417(C) to consider the case plan and custody arrangement and was also required by R.C. 2151.417(G)(3)(a) and (b) to consider whether Makayla could be returned home either with or without protective supervision. If the magistrate determined that Makayla could not be returned home with an order of protective supervision, the magistrate was then required to determine who should be given custody of Makayla. R.C. 2151.417(G)(3)(c).
It is apparent from the magistrate's findings that he considered the case plan, the custody arrangement, and reunification. As noted by the trial court, the magistrate expressly stated that had he thought a case plan would be helpful toward reunification possibilities, he would implement one, but what was demanded of appellant could not be put in a case plan. The magistrate specifically averred that appellant needed to alter her narcissistic personality and begin to focus upon Makayla's needs. The record clearly reflects that the magistrate considered appellant's case plan and progress, including the possibility of reunification, but found that under the circumstances, r eunification was not possible.
In addition, we find that the record supports the trial court's determination that the magistrate's error was harmless because the evidence established that returning Makayla to appellant's care would not be in Makayla's best interest. Specifically, the evidence established that when Makayla was in appellant's care, appellant violated the stay away order by allowing Makayla to be in the presence of Madison on July 4, 2000. In addition, in August 2000, Makayla slipped and fell into the Scioto River during a visit with appellant. These incidents led to the change in a ppellant's visitation from unsupervised to supervised.
Julie Prince, the FCCS caseworker assigned to the case, testified that the case plan required that appellant fulfill certain objectives, including attending anger management and domestic violence counseling; providing for Makayla's basic needs; establishing safe and stable housing; maintaining stable employment; taking parenting classes; and obtaining a psychological evaluation. Prince opined that although appellant had recently completed the case plan and had expressed a desire to reunify with Makayla, appellant was not yet capable of effectively parenting Makayla. Specifically, Prince noted that appellant had not yet established stable housing, as she lived at times with her grandparents and at times with friends. Appellant never established independent housing, even though FCCS offered to pay f or the security deposit.
In addition to appellant's inability to establish stable housing, she had also been unable to maintain stable, long-term employment. From the time Makayla was born to the time of trial, appellant switched employment six or seven times. Appellant admitted that she had not stayed at any one place of employment for any s ignificant amount of time.
Elaine Benchant, appellant's parenting class instructor, testified that although appellant was awarded a certificate for completing the classes, she refused to accept responsibility for her presence in the class and did not fully participate in the class. She opined that appellant was very immature and did not seem to comprehend that her level of immaturity, poor decision-making skills and lack of drive were obstacles to caring for her child. She further opined that appellant was not yet capable of effectively parenting Makayla, and appellant would benefit from long-term individual counseling and additional parenting classes to help her accept and understand her r esponsibilities as a parent.
Nancy McCarthy, Ph.D, testified that she diagnosed appellant in March 2000 with narcissistic personality disorder. McCarthy described appellant as one who is self-centered and self-focused. She also stated that appellant routinely places her needs above those of others and has very little understanding of, or concern for, the needs of others. McCarthy also testified that although appellant had expressed a desire to parent Makayla, she seemed to have little insight as to the ways in which her own personality disorder could be harmful to Makayla. She opined that appellant's narcissistic personality would interfere with her ability to effectively parent Makayla and could result in Makayla developing the same personality disorder. In addition, McCarthy described appellant's maturity level as that of an early adolescent even though her chronological age was nineteen at the time of the e valuation.
In addition to the unfavorable testimony offered by Prince, Benchant and McCarthy as to appellant's parenting abilities, appellant's testimony was generally inconsistent and otherwise lacked credibility. For example, the versions of the July 4, 2000 and Scioto River incidents she told Prince were vastly different than the versions she testified to in court. For instance, appellant told Prince that Makayla had substantial contact with Madison on July 4, 2000, but that she (appellant) did not believe it was a direct violation of the court's stay away order because Makayla did not seem to be afraid of Madison. In contrast, she testified at trial that she and Makayla merely bumped into Madison at a concession stand, conversed briefly, and parted ways with him there. With regard to the Scioto River incident, appellant told Prince that Makayla was wading in the river and slipped and fell. At trial, she testified that Makayla had simply gotten her c lothing wet while sitting on the riverbank.
Further, although appellant testified that Madison had never physically abused her, she admitted that she did not contest the allegations of domestic violence against Madison set forth in the November 1999 dependency/neglect complaint. She also stated that she lied to Barr concerning the domestic violence allegations against Madison because she thought it would make Barr angry and w ant to be a part of Makayla's life.
Appellant also denied telling Prince that she was ever asked to leave her grandparents' home or that she lived with a boyfriend, when Prince testified to the contrary. She also admitted to lying to Prince and Barr about allegations of abuse concerning her father. In addition, she admitted that she had never been completely honest in her dealings with Prince. She further admitted that she lied for self-serving purposes and never thought about how the lies would affect her case and her chances of r egaining custody of Makayla.
A reviewing court may not reverse a juvenile court's custody determination absent an abuse of discretion. Brown, supra. In order to find an abuse of discretion, a reviewing court must conclude that the juvenile court's decision is unreasonable, arbitrary, or unconscionable. Id. The discretion granted a juvenile court in custody matters should be afforded the utmost respect, given the nature of the proceedings and impact of the court's determination on the lives of the concerned parties, including, most importantly, the child at the center of the custody matter. Id. In addition, credibility determinations and the weight to be afforded evidence are within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Given these parameters, and upon review of the record before us, we cannot conclude that the trial court erred in determining that any error the magistrate may have made in stating that appellant was required by law to file a motion for legal custody of Makayla amounted to harmless error, as it is clear that, based upon the foregoing evidence, the magistrate would not have granted custody of Makayla to appellant even had she filed a motion for custody. Accordingly, appellant's s econd assignment of error is not well-taken.
By the third assignment of error, appellant contends that the trial court erred in sustaining the magistrate's decision which failed to establish a specific visitation schedule between a ppellant and Makayla.
Preliminarily, we note that appellant did not request that the magistrate establish a specific visitation schedule; rather, appellant requested only that visitation be unsupervised. Further, under R.C. 4151.417 and4151.42, the magistrate was not required to issue a visitation schedule. At a review hearing, the court may take any reasonable action it finds necessary and in the best interest of the child may choose to discontinue any action it determines is not in the best interest of the child. R.C. 2 151.417(A).
Upon review of the record, we find that the magistrate made it clear that his primary consideration with regard to visitation was Makayla's best interest. After fully considering various visitation alternatives, the magistrate determined that it would be in Makayla's best interest to permit the Nolls to determine the specifics of appellant's supervised visitation with Makayla. Nothing in the record suggests that the trial court abused its discretion in so finding. To the contrary, the record establishes that Mrs. Noll had in the past routinely facilitated visitation between appellant and Makayla and was willing to do so in the future. Further, Mrs. Noll testified that she would like to see Makayla and appellant reunified if appellant proved stability and obtained counseling. Based upon the record before us, we cannot find that the trial court erred in sustaining the magistrate's decision not to order a specific visitation schedule between appellant and Makayla and to permit the Nolls to determine the specifics of visitation in their discretion. Accordingly, the t hird assignment of error is not well-taken.
For the foregoing reasons, all three of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile B ranch is affirmed.
Judgment affirmed.
TYACK, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.