¶ 70 While I share the majority's concern for the welfare of the minor child in this case, I respectfully dissent from the majority's decision affirming the lower court's termination of appellant's parental rights and granting permanent custody to appellee.
¶ 71 The Ohio Supreme Court addressed the constitutional rights of a parent, in In re Murray (1990), 52 Ohio St.3d 155, 157, as follows:
¶ 72 "The United States Supreme Court has stated that the right to raise one's children is an "essential" and "basic civil right." [Citations omitted.] Parents have a "fundamental liberty interest" in the care, custody, and management of the child. [Citation omitted.] Further, it has been deemed "cardinal" that the custody, care, and nurture of the child reside, first, in the parents. [Citations omitted.]"
¶ 73 Next to adjudicating the death penalty, a court can be called upon to make no more life impacting decision than to terminate a person's parental rights to his or her child. Indeed, the Ohio Supreme Court has acknowledged that the permanent termination of parental rights is "the family law equivalent of the death penalty." In re Hayes (1997),79 Ohio St.3d 46, 48. A parent's right to the custody of his or her child has been deemed to be "paramount." In re Perales (1977),52 Ohio St.2d 89, 97.
¶ 74 As the Third Ohio Appellate District has aptly noted:
¶ 75 "A parent's right to raise his or her child is an "essential" and "basic civil right." Parents have a "fundamental liberty interest" in the care, custody, and management of their children. A grant ofpermanent custody divests natural or adoptive parents of any and all parental rights, privileges and obligations, including all residual rights and obligations. Therefore, parents facing permanent termination of parental rights must be afforded every procedural and substantive protection the law allows. Statutory provisions governing child custody matters are to be liberally construed to provide for care, protection, and mental and physical development of children, in a family environment when possible, separating child from parents only when necessary for the child's welfare or in the interests of public safety. Moreover, judicial decisions terminating parental rights receive careful scrutiny, and thepermanent removal of a child may be condoned only where there is demonstrated an incapacity on the part of the parent to provide adequate parental care, not because better parental care can be provided by foster or adoptive parents." (Footnotes omitted and emphasis sic.) In re Fry, 3rd Dist. No. 9-02-14, 15, 16, 2002-Ohio-3935, 2002 Ohio App. LEXIS 4063, at paragraph eight.
¶ 76 In the absence of clear and convincing evidence of imminent physical or emotional harm to a minor child, courts and local family service agencies should take Herculean efforts to preserve the parental relationship between a natural mother or father and her or his child. Out of respect for maintaining the natural parental relationship, the Legislature has mandated that such parental relationship cannot be judicially terminated unless such termination is supported by the highest civil evidentiary standard — clear and convincing evidence. R.C. 2151.41.4(B). The serious degree of this evidentiary standard has been recognized by the Ohio Supreme Court. Cross v. Ledford (1954),161 Ohio St. 469.
¶ 77 While there is evidence in this case that appellant has parenting problems, such evidence does not rise to clear and convincing evidence that permanent termination of appellant's parental rights is in her daughter's best interest at this time. In fact, there is evidence to the contrary. As the majority notes, "[t]he child's counselor has testified that if the child is permanently removed from the custody of her mother, the child is at risk of suffering devastating emotionalharm." (Emphasis added.)
¶ 78 The lower court recognized the "devastating" nature of a court ordered permanent parental separation in this case at this time, but apparently was persuaded by the possibility that appellant's continuing dysfunctional relationship with the child's father, related verbal hostilities and confrontations, and the risk of domestic violence made "it highly likely that if the child were to be reunited with either parent she would be subject to removal at a later date," which subsequent removal also could be devastating.
¶ 79 Based on such possibilities, the lower court apparently decided that it was better to risk devastating the minor child now, than risk the possibility of devastating the child later. The lower court's decision is erroneous and contrary to the concept of clear and convincing evidence.
¶ 80 A decision based on clear and convincing evidence requires overwhelming facts, not mere speculation of possible future events. While there is evidence in this case that appellant has maturity problems and certainly does not qualify for a good housekeeping award, the evidence does not clearly and convincingly demonstrate that appellant's 3½ year old daughter was ever physically or emotionally harmed by appellant or by her relationship with Peter Hill. The record contains no evidence of any health department citation or order concerning the inhabitability of appellant's residence. However, the record does demonstrate that the lower court and Geauga County Jobs and Family Services ("GCJFS") deemed it safe and appropriate for the minor child to visit appellant at her residence five days a week several months after a sheriff's deputy observed what he perceived to be overwhelming animal-related odors at that residence. Certainly, the lower court and GCJFS would not have permitted such visitations if the conditions were so bad as to warrant permanent termination of appellant's parental rights. There is no evidence in the record that the living conditions significantly worsened after the court permitted such visitations.
¶ 81 The lower court's concerns about appellant's co-dependency and the possibility of future removal are understandable, but rest more on future possibilities than clear and convincing evidence. Those concerns can be addressed by ongoing monitoring and supervision by GCJFS and the court. Moreover, the evidence in the record establishes that the child's relatives have a relationship with the child and that her grandparents have been supportive.
¶ 82 Every parental rights termination case involves the difficult balance between maintaining a natural parent-child relationship and protecting the best interest of a child. However, a permanent decision that is devastating to a 3½ year old child now, to avoid the possibility of devastating the child later, is not in the child's best interest. Instead of throwing in the towel, the GCJFS should be energized to do everything it can to prevent such devastation now and in the future.
¶ 83 With confidence that the GCJFS (under the capable watchful eye of the lower court) can monitor and protect the minor child in this case and in accordance with Ohio law that permits the permanent termination of parental rights only when supported by clear and convincing evidence (which is not present in this case), I would reverse the decision of the trial court below.