OPINION
{¶ 1} Appellant, Steven Winfield, appeals the decision of the Lake County Court of Common Pleas, Domestic Relations Division, terminating the shared parenting agreement entered into subsequent to the parties' divorce and awarding legal custody to appellee, Amy Winfield, nka Tierno.
 {¶ 2} The parties were divorced by way of a decree of divorce filed with the Lake County Court of Common Pleas on June 30, 1998. As part of the decree, the parties entered into a shared parenting plan for their minor child, Christopher. The custody schedule provided for an alternating weekly placement from Friday to Friday. Appellee was designated the residential parent for school purposes. At the time of the divorce, however, Christopher was 3 years old and had not yet started school.
 {¶ 3} After the divorce, in the fall of 1999, Christopher was having problems sharing and playing with his peers and problems with transitioning between activities. Apparently, Christopher also possessed a high energy level. An individual educational program indicated that he was a "special needs child" and needed placed in an integrated special needs program.
 {¶ 4} Eventually, in October, 2000, his pediatrician diagnosed Christopher with Attention Deficit with Hyperactivity Adjustment Disorder ("ADHD"). According to appellant, appellee was instrumental in obtaining help for Christopher's disorder. However, appellant was uncomfortable with the diagnosis and requested a referral to a mental health specialist.
 {¶ 5} Without input from appellee, appellant scheduled an appointment with a mental health specialist, Dr. William Rowane, on December 30, 2000. Appellant notified appellee of the appointment via a letter dated December 22, 2000. Although appellant wanted Dr. Rowane to treat Christopher, he disagreed with the psychiatrist regarding medications. Consequently, at the beginning of 2001, appellant commenced homeopathic treatment on Christopher consisting of fish oil pills. Appellant did so without discussing the treatments with appellee. Appellant testified that he refrained from using the pills after appellee expressed her disfavor. However, appellant's own expert psychologist, Dr. Sandra McPherson indicated that although appellant had discussed the fish oil treatments with Dr. Rowane, there was no plan for initiating this substance and neither the doctor nor the mother was part of the agreement. As such, "proceeding to do so unilaterally is clearly an instance of poor judgment and is not the kind of behavior that is desirable in the context of shared parenting."
 {¶ 6} Nevertheless, appellant's concern with medicating Christopher persisted. He expressed this concern to Christopher's teachers who explained that, despite appellant's concerns, Christopher was better equipped to perform at school and engage with friends while on his medication. Christopher's teacher indicated that when Christopher was in appellant's custody, he was ill-prepared for work and was not calm. Alternatively, when Christopher was in appellee's custody, he was ready to work and able to concentrate. Testimony at trial revealed that a child with ADHD needs a stable home base. Both parties' expert psychologists agreed that an even split of custody was not in Christopher's best interest.
 {¶ 7} Appellee filed her motion to terminate the shared parenting agreement or, in the alternative, to modify visitation on July 20, 2000. Appellant filed his corresponding motion to terminate the shared parenting agreement on October 20, 2000. The court consolidated these two motions and issued its decision on December 12, 2001, terminating the shared parenting agreement and rendering appellee sole residential parent and legal custodian of Christopher.
 {¶ 8} Appellant assigns the following errors for this court's consideration:
 {¶ 9} "[1.] The trial court erred in terminating the shared parenting rights of appellant without a threshold finding that appellant is an unfit parent, and without overcoming a presumption of joint custody.
 {¶ 10} "[2.] The trial court erred in determining that the best interests of the child necessitates appellee be named the residential parent and legal custodian."
 {¶ 11} Under his first assignment of error, appellant asserts four arguments of constitutional dimension for our review. Specifically, appellant contends that R.C. 3109.04(E) and (F) are invalid, both facially and as applied because they allow for the termination of a parent's fundamental right to care, custody and control of the parent's child without (1) a prior finding of unfitness and (2) without a presumption of joint custody. Appellant also raises the same arguments under the rubric of equal protection.
 {¶ 12} By way of background, R.C. 3109.04(E) sets forth the procedure for modifying a prior decree allocating parental rights and responsibilities for the care of children. In order to modify a prior decree, R.C. 3109.04(E)(1)(a) mandates a finding (1) of a change in circumstances; (2) that the modification is necessary to serve the best interest of the child; and (3) that the harm resulting from the change will outweigh the benefits of not changing. R.C. 3109.04(F) sets forth various factors a court should consider in determining the child's best interest. Neither of these statutory subsections requires an inquiry into parental unfitness. Appellant effectively maintains that such an omission violates his constitutional rights as a parent.
 {¶ 13} That said, to preserve a claim for appeal, the appellant is required to first bring that claim to the trial court's attention. Failure to do so operates as a waiver of the claim on appeal. In reBrunstetter (Aug. 7, 1998), 11th Dist. No. 97-T-0089, 1998 Ohio App. LEXIS 3635, at 6. Appellant failed to so object.
 {¶ 14} Furthermore, R.C. 2721.12 states "* * * if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general * * * shall be served with a copy of the complaint in the action or proceeding and shall be heard." "R.C. 2721.12 applies to actions where a petitioning party asks the court to declare the rights, status, or other legal relations of the parties." Cicco v. Stockmaster
(2000), 89 Ohio St.3d 95, 98. To the extent that a motion to terminate a shared parenting agreement fits this definition and, in any event, appellant's constitutional arguments necessarily affect the rights and legal status of the parties in the instant case, R.C. 2721.12 applies. However, there is no evidence that appellant served the attorney general with a complaint. As such, appellant failed to properly comport with the dictates of R.C. 2721.12 regarding his constitutional challenge to the aforementioned statutes.
 {¶ 15} However, even if appellant had properly preserved his constitutional arguments, his assignments are still without merit. To wit, in Ohio, child custody disputes fall within the coverage of either R.C. 3109.04 or 2151.23. R.C. 3109.04 provides guidance to domestic relations courts for the allocation of parental rights and responsibilities between divorcing parents. Alternatively, R.C.2151.23(A)(2), gives juvenile courts exclusive jurisdiction, "to determine the custody of any child not a ward of another court of this state[.]"
 {¶ 16} Notwithstanding these guidelines, the Ohio Supreme Court's decision in In re Perales (1977), 52 Ohio St.2d 89 announced a rule governing custody disputes between parents and nonparents. In Perales,
the Supreme Court found that it was improper for the trial court to rely upon R.C. 3109.04 because, under that section, the opposing parties are usually the child's parents, who have a right to custody and who both stand on equal footing, and a finding of unsuitability would be inappropriate. Id. at 96. Accordingly, in custody actions between parents, the best interest of the child test should govern because, "the welfare of the child would be the only consideration before the court." Id.
 {¶ 17} However, in determining the standard in custody actions between a parent and a non-parent, the Perales court noted that in all cases of controverted right to custody, "the welfare of the minor is first to be considered, but parents who are `suitable' persons have a `paramount' right to custody of their minor child unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." Id. at 97. Therefore, the Perales court concluded that, "[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability. * * *" Id. at syllabus.
 {¶ 18} This standard has not been regularly applied to custody disputes between a parent and a nonparent under R.C. 3109.04, and instead the best interests of the child test has traditionally applied. However, in Esch v. Esch (Feb. 23, 2001), 2d Dist. No. 18489, 2001 Ohio App. LEXIS 679, the Second District found the best interests standard in R.C. 3109.04
was unconstitutional in custody disputes between a parent and a non-parent. The Esch court grounded its holding on the federal Supreme Court's decision in Troxel v. Granville (2000), 530 U.S. 57. In Troxel,
the Supreme Court held a statute unconstitutional that allowed a state court to infringe upon a parent's fundamental right to make child-rearing decisions by ordering visitation to a non-parent. In this limited respect, the court in Esch found R.C. 3109.04 unconstitutional and held that the standard for determining custody between a nonparent and a parent is that established in Perales, supra.
 {¶ 19} Appellant's argument relies heavily upon the Troxel
decision. In Troxel, the paternal grandparents of two children desired more visitation with the children than the children's mother would allow them to have. In striking down a Washington statute giving anyone the ability to petition the court for visitation, the Supreme Court reiterated that parents have a fundamental right to make decisions regarding the care, custody, and control of their children. Id. at 65-66.
 {¶ 20} Appellant cites Troxel for the proposition that decisions of a fit parent cannot be overridden by a judge utilizing merely a "best interest" standard. Id. at 67. Appellant argues that insofar as the lower court failed to make a suitability determination, it improperly intruded upon appellant's fundamental rights as a parent by interjecting its own conclusion of what is in the best interest of the child without first concluding the parent unfit to make such a determination. Id. at 69-70. Appellant further cites Esch, supra, to buttress his position. Appellant asseverates that, in interpreting Troxel, the Second District held that the best interest standard makes it too easy for a trial court to usurp the wishes of a parent simply by disagreeing with that parent. Although appellant's points are to some extent valid, we disagree with the application of his argument to the current circumstances.
 {¶ 21} To wit, the best interests and welfare of the child is a primary consideration in all children cases, regardless of the court or parties involved. However, considerations of parental rights become paramount in certain contexts. That is, parents who are suitable have a fundamental right to raise their own children. See, In re Murray (1990),52 Ohio St.3d 155, 157. Hence, in the context of custody proceedings between a parent and a nonparent under R.C. 2151 custody may not be awarded to a nonparent without first making a finding of parental unsuitability. In re Daily, 4th Dist. No. 02CA31, 2003-Ohio-787 at ¶ 10, citing, In re Perales, supra.
 {¶ 22} However, the best interest standard of R.C. 3109.04
presupposes that both parents are suitable. Daily, supra at ¶ 10. As such, in divorce-related custody disputes involving parents on an equal legal footing, each of which is eminently qualified to raise a child, questions of suitability are normally not relevant. Thus, the child's best interest becomes the only relevant consideration. In re Pryor
(1993), 86 Ohio App.3d 327, 333.
 {¶ 23} In the current matter, the custody dispute is between two parents. To the extent that both parents are presumed suitable in this context, it is unnecessary for a court to enter into a suitability or unfitness analysis. As detailed above, under such circumstances, the child's best interest is the focus of the court's inquiry. Because R.C.3109.04 is predicated upon a basic recognition of parental suitability, appellant's substantive due process rights were not violated by the statute's silence on this inquiry.
 {¶ 24} Appellant further states that his fundamental rights were violated because R.C. 3109.04(E) and (F) do not admit to a presumption of joint custody. Appellant does not make an explicit argument on this issue. Hence, this court cannot reasonably evaluate appellant's position on this issue with any precision. That said, subsequent to their divorce, appellant and appellee entered into a shared parenting agreement. The legal concept of shared parenting is relatively new in Ohio law and refers to an agreement between parties regarding the care of their children that was previously termed joint custody. In re Bonfield
(2002), 97 Ohio St.3d 387, 390. The notion of shared parenting replaced that of joint custody to, "reflect a shared parenting concept where both divorcing parties remain important to their children's development." Id. Thus, the presumption of joint custody to which appellant refers makes little sense once one recognizes that the very agreement into which the parties entered was, for all practical purposes, a joint custody agreement. Therefore, R.C. 3109.04(E) and (F) do not unconstitutionally deny appellant's right to substantive due process.
 {¶ 25} Next, appellant argues that R.C. 3109.04(E) and (F) denied him equal protection of the laws. Specifically, appellant maintains that he and appellee are similarly situated as presumably fit parents, yet the trial court completely terminated his constitutionally protected right to the custody of his child. We disagree.
 {¶ 26} The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. "So long as laws are applicable to all persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against denial of equal protection of the laws." Conley v. Shearer (1992), 64 Ohio St.3d 284,288.
 {¶ 27} In the current matter appellant fails to set forth any argument as to how the statute in question operates to treat him in a way dissimilar to appellee (or any other similarly situated parties). To the extent that R.C. 3109.04 operates evenhandedly to all parties in the context of child custody situations, there is no unequal treatment and therefore no equal protection violation.
 {¶ 28} For the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 29} In his second assignment of error, appellant argues that the trial court was required, but failed to independently determine that the modification of the shared parenting agreement was necessary to serve the best interest of the child.
 {¶ 30} When a judge makes a decision regarding the custody of children and when the decision is supported by a substantial amount of competent and credible evidence, the decision will not be reversed absent an abuse of discretion. Bates v. Bates (Dec. 7, 2001), 11th Dist. No. 2000-A-0058, 2001 Ohio App. LEXIS 5428, at 8, citing Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 23. The term abuse of discretion implies more than simply an error of law; rather, it must be shown that the court's attitude is unreasonable, arbitrary, or unconscionable. Bates, supra, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, while a trial court's discretion in a custody proceeding is broad, it is not absolute, and the trial court must follow the procedure described in the applicable statute. Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 31} In Ohio, the authority of the domestic relations courts to terminate a shared parenting plan is found in R.C. 3109.04(E)(2)(c). R.C. 3109.04(E)(2)(c) provides the relevant criteria in determining whether to grant a party's motion to terminate a shared parenting plan. This section reads, in pertinent part: "The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interests of the children." Further, "[u]pon termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children * * * as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d).
 {¶ 32} Thus, the plan may be terminated upon the request of either party, or when it is no longer in the best interest of the child. Moorev. Moore (Mar. 27, 1998), 11th Dist. No. 97-P-0008, 1998 Ohio App. LEXIS 1268, at 17, citing, Brannon v. Brannon (June 27, 1997), 11th Dist. No. 96-T-5572, 1997 Ohio App. LEXIS 2897, at 7. In the current matter, we find that the record and, in particular, the trial court's December 12, 2001, judgment entry, is more than sufficient to meet the statutory requirements.
 {¶ 33} However, appellant directly disputes the trial court's failure to demonstrate the necessity of terminating its former shared parenting agreement. Notwithstanding the important fact that both
appellant and appellee moved to have their erstwhile shared parenting agreement terminated, the record supports the court's findings. Specifically, the court found that the child had difficulty adjusting to school prior to receiving treatment for ADHD. The court noted that appellant, "acknowledges [appellee] was instrumental in causing this treatment to occur. Once the child was medicated, the school personnel found he was more on task in school, and was more readily accepted by his peers even to the extent of being named student of the month in April of 2001."
 {¶ 34} Moreover, the trial court indicated that the parties' parenting styles are significantly different: Appellee's home is more structured and the child knows the rules and the consequences for behavior that strays. Alternatively, appellant's home tends to be more relaxed and the child, "appears to have more ability to bend structure when he is with his father." The court noted that both psychologists who testified at the hearing agreed that a more structured routine environment is beneficial to the child, but both parents should continue to participate in decision making.
 {¶ 35} The court recognized that both appellant and appellee bring strengths and weaknesses to the child's environment; however, "[w]hen left to their own devices, [appellant and appellee] have difficulty facilitating parenting times and companionship rights." The court stated that:
 {¶ 36} "[t]he statute requires under the best interests tests that for shared parenting, the parties need to cooperate and facilitate in rendering joint decisions affecting the child as well as having the ability to encourage love, honor, affection, and contact between the child and both parents. In the case at bar, the parties have a great deal of difficulty rendering joint decisions through the cooperative negotiating process."
 {¶ 37} The court cited several instances where appellant acted unilaterally, without seeking appellee's input regarding medical attention for their child's ADHD.
 {¶ 38} In its conclusion, the court stated:
 {¶ 39} "that these parties are not good shared parenting candidates and both of their motions to terminate shared parenting should be granted. The court further finds based on the totality of the evidence, that given the child's ADHD diagnosis, [appellee] is better abele [sic] to serve as sole custodian provided however, husband is allowed to participate in decision making on important topics such as medication for the condition and the child's educational activities. Thus, the court concludes that a rather structured order should issue which will keep both parents involved with the child on a frequent and continuing basis."
 {¶ 40} The court then rendered its decision proclaiming appellee the residential parent and legal custodian of the child but granted appellant parenting time pursuant to Local Rule 31.[1]
 {¶ 41} The factual findings and legal conclusions of the court are detailed, elaborate and supported by competent and credible evidence; we cannot find, therefore, that the court abused its discretion in modifying the former shared parenting agreement and awarding appellee legal custody and residential parent status. As such, appellant's second assignment of error lacks merit.
 {¶ 42} For the above stated reasons, appellant's two assignments of error are overruled and the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is hereby affirmed.
Judgment affirmed.
Donald R. Ford, P.J., and William M. O'Neill, J., concur.
[1] Loc.R. 31 provides a formal parenting time guideline which, under the circumstances of the current matter, was amended to suit the parties' relative interests.