{¶ 27} The majority incorrectly concludes that trial counsel for Jasmin Roque was constitutionally ineffective and that counsel's performance prejudiced Jasmin's interests in the proceedings. I respectfully dissent.
 {¶ 28} The majority bases its decision on the facts that Jasmin's trial counsel had not communicated with Jasmin for eight months prior to the permanent custody hearing and that the trial court did not make arrangements for Jasmin, who was incarcerated at the time, to be present at the hearing. The majority asserts "that Jasmin's counsel had a duty to protect her rights, and the trial court was responsible for the basic integrity of the proceedings herein." The majority fails to acknowledge, however, that Jasmin is responsible for these shortcomings in theproceedings.
 {¶ 29} At the close of the permanent custody hearing, Jasmin's trial counsel addressed the court as follows:
 {¶ 30} Counsel: "For the record, I would inform the Court that I have not been in contact with my client for a period of time in excess of eight months. We have sent letters to the Trumbull County Jail, which we believe was where she was located at the time of the last hearing. She called and made two appointments in the early part of 2005 and had failed to appear for those two appointments. And I have had no further contact with my client."
 {¶ 31} Court: "I would note, I think it was in the adjudicatory [hearing], at one of the other hearings, she had appeared and the Court had inquired why she would bother asking for a lawyer if she wasn't going to use one. * * *"
 {¶ 32} Counsel: "She — we did have several meetings, and she was active in the case dating back to `04, but nothing in 2005."
 {¶ 33} Court: "Yeah. February 2004 the Court note indicates that mom had been — had come in and asked for court appointed counsel. She had been given your name and address and telephone number. She was advised it was her responsibility to notify you, and that she had not done so, and that the first time she met you was at that adjudicatory hearing."
 {¶ 34} Counsel: "Right. We had some follow-up meeting on April 7, 2004."
 {¶ 35} The record also indicates that Jasmin was personally served with notice of the hearing at the Trumbull County Jail on May 27, 2005, two months prior to the July 28, 2005 hearing.
 {¶ 36} The record clearly demonstrates that it was Jasmin who neglected to contact her attorney for eight months prior to the hearing, despite counsel's attempts at contacting Jasmin.
 {¶ 37} On June 27, July 11, and July 26, 2005, Jasmin wrote the court directly asking for "another chance" to prove that she could be a "fit" parent for Chantel. In these letters, Jasmin notes that she has also written children's services and was in contact with her case manager. Jasmin does not mention appointed counsel at all. She neither indicates that she was unable to contact counsel nor complains that she has not been in contact with counsel.
 {¶ 38} Jasmin's failure to contact her attorney is consistent with her behavior following her indictment for trafficking drugs within a school zone, during which time she failed to visit regularly with Chantel, failed to make support payments for Chantel, and failed to submit to drug screens.
 {¶ 39} Jasmin's failure to take an active interest in the legal proceedings to terminate her parental rights does not constitute ineffective assistance of counsel.
 {¶ 40} The majority also faults counsel for failing to object to testimony that Jasmin had tested positive for opiates and oxycontin in March 2005 and for allowing the letters written to the court to be admitted into evidence. Neither of these failures, however, compromises the basic fairness of the proceedings.
 {¶ 41} The trial court found that Jasmin "has not demonstrated long term sobriety and abstinence from illegal substances." This finding is not only supported by the single drug screen testified to at the hearing, but by the fact that Jasmin failed to submit to drug screens throughout 2005 until her incarceration in May. In other words, if the testimony regarding the failed drug screen were stricken from the record, the trial court's conclusion that Jasmin failed to demonstrate "long term sobriety and abstinence from illegal substances" would still be valid based on her failure to submit to drug screening. Cf. the testimony of Michael Sylvester, children's services supervisor of extended care services, that "we considered her failure to take the screens as positives."
 {¶ 42} The letters written by Jasmin to the court are admissible as voluntary admissions. Jasmin's trial counsel moved to admit the letters because they were the only communications from Jasmin that existed regarding the termination of her parental rights. Without these letters, there would have been no evidence that Jasmin was opposed to the termination of her parental rights.
 {¶ 43} Moreover, the letters do not constitute inadmissible hearsay because they were not admitted to prove the truth of any factual matter before the court. They simply attest Jasmin's love for Chantel and desire for another opportunity to prove that she could effectively parent Chantel. While Jasmin admits to having "made mistakes" and to "fail[ing] to complete a lot" in the letters, she never elaborates on what those mistakes or failures were. Nevertheless, Jasmin's mistakes and failures are well attested by other evidence in the record. Jasmin's letters contribute nothing to the establishment of the factual record in this case or the court's decision to terminate her parental rights.
 {¶ 44} Under the second assignment of error, the majority concludes that the trial court, "at a minimum," should have conducted an in camera interview with Chantel, on the record, to determine if she was of sufficient maturity to benefit from separate counsel. The majority misconstrues the issue before this court.
 {¶ 45} In In re Williams, 11th Dist. Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550, this court held that an inquiry into the child's level of maturity should be made "[w]hen * * * the court is informed of the child's expressed desire to remain with his natural parent." Id. at ]}18. In the present case, Chantel never expressed an unequivocal desire to remain with Jasmin.
 {¶ 46} The guardian ad litem's report states that Chantel "expressed * * * that she likes where she is [in foster care], considers the foster mother a `mother' but appreciates the difference; and would be happy living there." At the permanent custody hearing, the trial court queried the guardian ad litem about Chantel's preference:
 {¶ 47} Court: "Did you ask her where she would like to stay?"
 {¶ 48} Guardian: "Yes, I did, and she did say that she wanted to stay with the foster mother."
 {¶ 49} Court: "Does she show any type of anxiety or any distress by not being with her mother?"
 {¶ 50} Guardian: "Did not appear to at all, no."
 {¶ 51} The trial court made the same inquiry of Sylvester, a children's services supervisor:
 {¶ 52} Court: "Is this child old enough to express her wishes?"
 {¶ 53} Sylvester: "Yes."
 {¶ 54} Court: "And, to your knowledge, has she expressed her wishes as to where she'd like to be?"
 {¶ 55} Sylvester: "Yes."
 {¶ 56} Court: "And what are those wishes?"
 {¶ 57} Sylvester: "I think she would ultimately like to be with her mom in a stable safe environment, and she says that. But she's very comfortable in the foster home and she does not want to leave the * * * foster home."
 {¶ 58} Chantel's desire to "ultimately" live with Jasmin in a stable, safe environment does not require the appointment of independent counsel, particularly in light of Chantel's desire to remain in her presently stable, safe foster home. Virtually every child involved in such proceedings as these would like, on some level, to live with their natural parents provided those parents could provide a safe and stable home. Since there is no indication that Jasmin is presently capable of providing such a home for Chantel, there is no conflict between Chantel's wishes and the recommendation of the guardian ad litem that Jasmin's parental rights be terminated.
 {¶ 59} Without question "the fundamental or primary inquiry at the dispositional phase of these juvenile proceedings" is the best interests and welfare of the child. These are of "paramount importance." In reCunningham (1979), 59 Ohio St.2d 100, 106 (emphasis sic); also In reStillman (11th Dist.), 155 Ohio App.3d 333, 2003-Ohio-6228, at ¶ 52;Winfield v. Winfield, 11th Dist. No. 2002-L-010, 2003-Ohio-6771, at ¶ 21. Ultimately, it is Chantel's life and future which are at stake in these proceedings, not those of Jasmin.
 {¶ 60} The decision of the court below should be affirmed.